UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Renso Antonio Lino-Ramos** | Civ. No. _____ |
| *Petitioner,* | |
| v. | February 26, 2025 |
| **Antone Moniz,** Superintendent Plymouth County Correctional Facility, **Dorothy Michaud,** Boston Field Office Director, U.S. Immigration and Customs Enforcement, **Kristi Noem,** Secretary of the U.S. Department of Homeland Security, and **Pamela Bondi,** Attorney General of the United States, | **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**(EXPEDITED HEARING REQUSTED)** |
| *Respondents.* | |

**PRELIMINARY STATEMENT**

1. Renso Antonio Lino-Ramos ("Mr. Lino-Ramos"), a long-time resident of Massachusetts and beloved father of four U.S. citizen children, has been detained for nine months without a bond hearing. U.S. Immigration and Customs Enforcement ("ICE") has imprisoned Mr. Lino-Ramos at the Plymouth County Correctional Facility ("Plymouth") as he awaits the resolution of his claims for immigration relief, with no end in sight. Throughout his detention, Mr. Lino-Ramos has never received a fundamental safeguard of due process: a bond hearing to determine if his ongoing imprisonment is justified.

2. Respondents' prolonged detention of Mr. Lino-Ramos without a bond hearing violates both the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act ("INA"). Mr. Lino-Ramos files a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to

1

challenge his prolonged detention.

## PARTIES

3. Petitioner Renso Antonio Lino-Ramos is a twenty-seven-year-old Lawful Permanent Resident (LPR) of the United States and a long-time resident of Massachusetts. He is currently detained at Plymouth County Correctional Facility, 26 Long Pond Road, Plymouth, MA, 02360, in Respondents' custody.

4. Respondent Antone Moniz is named in his official capacity as the Superintendent of Plymouth County Correctional Facility. In this capacity, Respondent Moniz has custody of Petitioner because ICE contracts Plymouth County Correctional Facility to house immigration detainees, including Petitioner. Respondent Moniz is a legal custodian of Petitioner.

5. Respondent Dorothy Michaud is named in her official capacity as the Boston Field Office Director for ICE. In this capacity, Respondent Michaud has responsibility for and authority over the detention and removal of noncitizens within the Boston region, which includes Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont. Respondent Michaud is a legal custodian of Petitioner.

6. Respondent Kristi Noem is named in her official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

7. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In this capacity, Respondent Bondi has the authority to adjudicate removal cases and oversees the Executive Office

for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA").

## JURISDICTION

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1651, 2241, and Article I § 9, cl. 2 and the Fifth Amendment to the U.S. Constitution.

## VENUE

9. Under 28 U.S.C. § 2241(d), venue properly lies in the District of Massachusetts because Mr. Lino-Ramos is physically present and in the custody of Respondents within this District.

## STATEMENT OF FACTS

### A. Mr. Lino-Ramos's Traumatic Childhood

10. Mr. Lino-Ramos was born in Honduras in 1997. Ex. A (RALR Decl.), ¶ 10. His father was killed when he was one year old. *Id.* His stepfather, whom his mother married when Mr. Lino-Ramos was around three or four years old, physically abused him throughout his childhood. *Id.*; *see also* Ex. D, Plymouth County Correctional Facility Medical Records – Psychiatric Evaluation, 1 (noting that "Dt reports that . . . his stepfather 'hit and beat [him].'"). While living in Honduras, Mr. Lino-Ramos experienced persistent violence, continuous threats from members of the Los Zetas drug cartel, and poverty. Ex. A (RALR Decl.), ¶ 10.

11. In 2014, when he was sixteen years old, Mr. Lino-Ramos fled to the United States as an unaccompanied minor. *Id.* at ¶ 12.

12. Mr. Lino-Ramos has struggled with his mental health and with alcohol abuse since he was around eight or nine years old. *Id.* at ¶ 11. He previously consumed liquor daily to cope with his depression and anxiety. *Id.* However, four years ago, after the birth of his youngest

3

daughter Alejandrina, he started working on curbing his drinking and stopped drinking regularly. *Id.* at ¶ 21. He later made the decision to become sober and has now been completely sober for over two years. *Id.*

### B. Life in the United States

13. When Mr. Lino-Ramos first arrived in the United States, he lived with his aunt Norma and her husband Ariel in Lynn, Massachusetts. *Id.* at ¶ 12. On April 14, 2014, two months after arriving in the U.S., he applied for Special Immigrant Juvenile Status ("SIJS"), which he was granted on August 3, 2015. Ex. F (Form I-213). SIJS is a legal status granted to children who need the protection of a juvenile court because they have been abused, abandoned, or neglected by a parent.[1]

14. On July 19, 2017, Mr. Lino-Ramos adjusted to LPR status. *Id.*

15. Mr. Lino-Ramos's entire immediate family, including his sister, aunt and uncle, cousins, ex-partner, and four daughters, all reside in Massachusetts. Ex. A (RALR Decl.), ¶¶ 3, 4.; Ex. C (Norma Torres Decl.), ¶¶ 1, 2. He is very close to his family. Ex. A (RALR Decl.), ¶¶ 3, 4; Ex. B (Lilian Lino-Ramos Decl.), ¶¶ 1, 2, 4, 7; Ex. C (Norma Torres Decl.), ¶¶ 1, 2. Mr. Lino-Ramos was a longtime resident of Lynn, Massachusetts, where he lived with his ex-partner Stephanie Caraballo. Ex. A (RALR Decl.), ¶ 3. They share three daughters, Esperanza (age 6), Kielyn (age 5), and Alejandrina (age 4). *Id.* Esperanza lives with Mr. Lino-Ramos's aunt, Norma. Ex. C (Norma Torres Decl.), ¶ 5. Mr. Lino-Ramos also shares an eight-year-old daughter, Cathena, with his previous partner, Shaiann Molina. *Id.* All four of his daughters are U.S. citizens. *Id.* He was the primary economic provider for Stephanie and their three daughters. *Id.* He worked full-

---

[1] *Special Immigrant Juveniles*, U.S. CITIZENSHIP AND IMMIGR. SERV.S, https://www.uscis.gov/working-in-US/eb4/SIJ (last visited Jan. 24, 2025).

time as a delivery driver in Massachusetts, and before that as a mechanic, to support them. *Id.* at ¶ 8. Without his financial support, his two youngest daughters, Kielyn and Alejandrina, now face housing instability and financial insecurity. *Id.* at ¶ 9; Ex. C (Norma Torres Decl.), ¶ 6.

### C. Mr. Lino-Ramos's Convictions

16.     In 2018, at the age of twenty, Mr. Lino-Ramos was charged with Carrying a Firearm Without a License, Carrying a Loaded Firearm Without a License, and Defacing a Firearm Serial Number. Ex. F (Form I-213).

17.     In 2022, Mr. Lino-Ramos was arrested and charged with Breaking and Entering at Night with Intent to Commit a Felony and Attempt to Commit a Crime. *Id.* At that time, Mr. Lino-Ramos was working to reduce his drinking, but still drank on occasion. He had drunk alcohol that night and remembers accidentally falling asleep in an open car that was not his own. Ex. A (RALR Decl.), ¶ 14. He does not remember much else from that night. *Id.*

18.     On October 16, 2023, Mr. Lino-Ramos pled guilty to the five charges outlined above on the advice of his public defender and was sentenced to a total of two years and one day. *Id.* at ¶ 15. At the time, he was focused on being released as soon as possible to reunite with his family and return to his job as a delivery driver. *Id.* He did not understand the immigration consequences he could face following a guilty plea. *Id.*

### D. Mr. Lino-Ramos's Nine Months in ICE Detention

19.     After being granted parole from criminal custody, Mr. Lino-Ramos was arrested by ICE on May 29, 2024, and was taken to the Plymouth County Correctional Facility, where he has been detained for nine months. Ex. H, Notice to Appear.

20.     At Plymouth, Mr. Lino-Ramos's mental health has significantly declined. After spending ten days in solitary confinement from July 9 to July 19, 2024, as a result of a disciplinary

incident, his depression worsened, and he was diagnosed with Unspecified Depressive Disorder and prescribed antidepressants. Ex. A (RALR Decl.), ¶ 16; Ex. D, Plymouth County Correctional Facility Medical Records – Psychiatric Evaluation, 1. In addition, Mr. Lino-Ramos has experienced sleep disturbance and increased anxiety. Ex. A (RALR Decl.), ¶ 16; Ex. D, Plymouth County Correctional Facility Medical Records – Psychiatric Evaluation, 1.

21.     Mr. Lino-Ramos's physical health has also worsened due to his detention at Plymouth. In early July 2024, he fainted in his cell, but did not receive medical treatment until the next day. Ex. A (RALR Decl.), ¶ 19. Recent medical reports show that he has been diagnosed with thrombocytosis, and he regularly experiences pain in his bones and nosebleeds. Ex. D, Plymouth County Correctional Facility Medical Records – Tasks, 7-8 (11/14/2024, 11/20/2024, 11/26/2024, and 01/14/2025 entries report "dx thrombocytosis."); Ex. A (RALR Decl.), ¶ 17. In addition, he has gained 60 pounds since arriving at Plymouth. Ex. D, Plymouth County Correctional Facility Medical Records – Tasks, 6-7. He also has arthritis, elevated white blood cells, mean platelet volume deficiency, and elevated kidney enzymes, which his physicians are continuing to monitor and test. *Id.* at 18-31. Mr. Lino-Ramos's doctors have cautioned him that he is overweight and at increased risk of diabetes. Ex. A (RALR Decl.), ¶ 17. On January 14, 2025, his doctor ordered him to be placed on a cardiac diet. Ex. D, Plymouth County Correctional Facility Medical Records – Therapeutic Diet, 4. More generally, Mr. Lino-Ramos has suffered from the harsh conditions at Plymouth, including overcrowding, inconsistent access to heat, inadequate meals, scorching hot shower water, and limited access to phones, hygiene products, and recreation. Ex. A (RALR Decl.), ¶ 18; *see also* Ex. K, Boston University School of Law and Prisoners' Legal Serv.s of Massachusetts, *Chronicling 25 Years of Violations: ICE Detention at Plymouth County Correctional Facility* (Sept. 2024).

### E. Immigration Proceedings

22. On May 29, 2024, ICE placed Mr. Lino-Ramos in removal proceedings, alleging that his breaking and entering conviction constituted both an aggravated felony and a crime involving moral turpitude. Ex. H, Notice to Appear.

23. DHS has been aware of all of Mr. Lino-Ramos's convictions since the initiation of his removal proceedings, Ex. F (Form I-213), but did not charge him with removal based on his firearms offense.

24. On June 10, 2024, the Immigration Judge denied Mr. Lino-Ramos's request for a bond hearing, concluding that he is statutorily ineligible for bond under 8 U.S.C. § 1226(c). Ex. L, Order of the Immigration Judge dated June 10, 2024. ICE has now detained him at Plymouth without a bond hearing for nine months.

25. Due to his family's limited economic resources, language barriers, and his ongoing detention, Mr. Lino-Ramos has faced significant difficulty securing immigration counsel. Ex. A (RALR Decl.), ¶ 23. Initially, he was misled by a private immigration attorney, to whom his family paid $1,000. *Id.* Mr. Lino-Ramos believed the attorney had agreed to represent him in his immigration proceedings and that the attorney had been working on his case for two months. *Id.* However, the attorney did not produce any work product and failed to appear at his scheduled master calendar hearings on September 30, 2024, and November 4, 2024. *Id.*

26. Afterwards, with the assistance of undersigned counsel, Mr. Lino-Ramos made diligent efforts to secure pro bono representation in his removal case. *Id.* However, local legal service providers—including the Northeast Justice Center, Justice Center of Southeast Massachusetts, Political Asylum/Immigration Representation Project ("PAIR Project"), and seven local law school clinics, including undersigned counsel—did not have capacity to represent him.

*Id.*

27. On December 10, 2024, undersigned counsel entered a limited appearance on Mr. Lino-Ramos's behalf solely for the purpose of submitting a Motion to Terminate Removal Proceedings and for the Appointment of Counsel in immigration court. Ex. G, Mot. To Terminate and Appointment of Couns., Dec. 10, 2024. That motion explained Mr. Lino-Ramos was in fact not deportable on either of the grounds alleged by ICE since his breaking and entering conviction was neither an aggravated felony nor a crime involving moral turpitude. *Id.* Notably, prior to the filing of Mr. Lino-Ramos's Motion to Terminate, the Immigration Judge expressed skepticism about one of the government's charges of removability during a master calendar hearing on September 30, 2024. *Id*. DHS was aware of all of Mr. Lino-Ramos's convictions since the initiation of his removal proceedings but still detained him on erroneous charges of removability. *See* Ex. F (Form I-213).

28. Unbeknownst to Mr. Lino-Ramos, on December 6, 2024, ICE amended the Notice to Appear (NTA), withdrawing the original charges and adding a new charge for violation of Immigration and Nationality Act ("INA") § 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), based on his conviction of Unlicensed Carrying of a Firearm. Ex. E (Form I-261). On December 27, 2024, the Immigration Judge denied Mr. Lino-Ramos's First Motion to Terminate as moot. Ex. A (RALR Decl.), ¶ 23.

29. Through partial funding from the Boston Immigration Justice Accompaniment Network ("BIJAN") and his family's zealous fundraising efforts, Mr. Lino-Ramos finally secured low-bono representation by a private immigration attorney on January 27, 2025. *Id.*

30. With the assistance of counsel, on February 7, 2025, Mr. Lino-Ramos applied for LPR cancellation of removal, a form of immigration relief that would allow him to maintain his

lawful permanent residence in the U.S. Ex. J, EOIR-42A, Feb. 7, 2025

31. On February 18, 2025, Mr. Lino-Ramos, with the assistance of counsel, filed a second motion to terminate on the grounds that his firearms conviction is categorically overbroad and not a deportable offense. Ex. I, Second Mot. to Terminate Proceedings, Feb. 18, 2025.

32. As of the date of this filing, both Mr. Lino-Ramos's cancellation application and second motion to terminate are pending before the Immigration Judge. He is scheduled for an individual hearing on his cancellation application on March 28, 2025.

F. **Rehabilitation and Release Plan**

33. If released, Mr. Lino-Ramos is committed to continuing treatment for Unspecified Depressive Disorder, including psychiatric medication and talk therapy. Ex. A (RALR Decl.), ¶ 20. He has complied with his psychiatric medication while in detention. Ex. D, Plymouth County Correctional Facility Medical Records – Chart Notes, 15. Mr. Lino-Ramos is also committed to maintaining his sobriety and enrolling in Alcoholics Anonymous, which is not currently available to him at Plymouth. Ex. A (RALR Decl.), ¶ 21.

34. Mr. Lino-Ramos's family members have pledged to support him with housing and reintegration into the community and family life. Ex. B (Lilian Lino-Ramos Decl.), ¶ 2. If released, Mr. Lino-Ramos will live with his sister Lilian Lino-Ramos, who is also an LPR. *Id.* at ¶¶ 1-2. His cousin, Jose Julian Lino, has offered him a job in construction. *Id.* at ¶ 2. His uncle, Vidal Lino, whom Mr. Lino-Ramos had worked with before, has offered him a job as a mechanic. *Id.*

35. Mr. Lino-Ramos's aunt, Ms. Norma Torres, has legal custody of his daughter, Esperanza, who resides with Ms. Torres. Ex. C (Norma Torres Decl.), ¶ 5. Due to Ms. Torres's declining age and health, she needs Mr. Lino-Ramos's support in raising her and his other daughters, who also have been struggling without their father. *Id.* at ¶¶ 6, 11. Mr. Lino-Ramos is

eager to reunite with his daughters and to support them both financially and emotionally. Ex. A (RALR Decl.), ¶ 24.

36. While he was incarcerated, Mr. Lino-Ramos strengthened his connection to his faith and engaged in consistent spiritual practices. Ex. A (RALR Decl.), ¶ 22. At Essex County / Middleton House of Corrections, he met with a pastor twice a week and read the Bible and prayed every day. *Id.* At Plymouth, he participates in a spiritual group that prays together four times a week. He still reads the Bible and prays every day independently. *Id.*

37. Mr. Lino-Ramos has survived a traumatic upbringing, but nevertheless, he views the world with a sense of hope and purpose and remains determined to build a better life for himself and his children. Ex. A (RALR Decl.), ¶¶ 5, 6, 21, 24. He looks forward to rejoining his community and family, working again as a productive member of society, and, most importantly, supporting his four young daughters. *Id.*

## FIRST CAUSE OF ACTION
## FIFTH AMENDMENT TO THE U.S. CONSTITUTION
## PROLONGED INCARCERATION WITHOUT A BOND HEARING
## IN VIOLATION OF PROCEDURAL DUE PROCESS

38. The allegations contained in paragraphs 1 through 37 above are repeated and realleged as though fully set forth herein.

39. Respondents have violated Mr. Lino-Ramos's procedural due process rights by subjecting him to prolonged detention without a bond hearing before a neutral decision-maker.

40. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V.

41. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Procedural due process requires "adequate procedural protections" to

ensure that the government's justification for confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint." *Id*. (citations omitted).

42. The factors set forth under the *Mathews v. Eldridge* balancing test—namely (1) "the private interest . . . affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," 424 U.S. 319, 335 (1976)—establish that Mr. Lino-Ramos's prolonged detention without a custody hearing violates procedural due process.

43. In the alternative, Mr. Lino-Ramos's ongoing detention without a bond hearing is unconstitutional when considered under the factors set forth in *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016) ("*Reid I*"), *vacated and remanded in part*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018).

44. Due process further requires that, at the bond hearing, the government bear the burden of establishing that Petitioner's continued detention is necessary to mitigate flight risk, by the preponderance of the evidence, or that he is a danger to the community, by clear and convincing evidence, and that no condition or combination of conditions can reasonably assure his future appearance and the safety of the community. *See Hernandez-Lara v. Lyons,* 10 F.4th 19, 39-41 (1st Cir. 2021); *see also Brito v. Barr*, 415 F. Supp. 3d 258, 271 (D. Mass 2019), *vacated in part and remanded*, *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021).

45. Due process also requires that, at the bond hearing, the decision-maker consider Mr. Lino-Ramos's ability to pay a bond and alternatives to bond when setting conditions of release. *See Hernandez v. Sessions*, 872 F.3d 976, 992-93 (9th Cir. 2017).

**SECOND CAUSE OF ACTION**
**FIFTH AMENDMENT TO THE U.S. CONSTITUTION**
**PROLONGED INCARCERATION IN VIOLATION OF SUBSTANTIVE DUE PROCESS**

46. The allegations contained in paragraphs 1 through 45 above are repeated and realleged as though fully set forth herein.

47. Respondents have violated Mr. Lino-Ramos's substantive due process rights by subjecting him to prolonged incarceration.

48. Substantive due process "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citations and internal quotations omitted) (emphasis original). Accordingly, substantive due process prohibits civil detention that is punitive in purpose or in effect, including civil detention that is excessively prolonged in relation to its purpose. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). Here, Mr. Lino-Ramos's prolonged incarceration, which has never been justified by Respondents, violates his substantive due process right to be free from physical restraint.

**THIRD CAUSE OF ACTION**
**IMMIGRATION AND NATIONALITY ACT**
**INCARCERATION WITHOUT A BOND HEARING IN VIOLATION OF 8 U.S.C. § 1226**

49. The allegations contained in paragraphs 1 through 48 above are repeated and realleged as though fully set forth herein.

50. The Immigration and Nationality Act, 8 U.S.C. § 1226(c), requires the detention of a noncitizen who "is deportable" based on a predicate ground of deportability enumerated in the statute.

51. Petitioner is not "deportable" under a predicate ground of deportability listed at § 1226(c).

52.     As a result, Petitioner is not subject to detention under § 1226(c) but instead subject to detention under the default detention statute, 8 U.S.C. § 1226(a). *See* 8 U.S.C. § 1226(a) (providing that § 1226(a) authorizes detention "pending a decision on whether the alien is to be removed from the United States . . . . [e]xcept as provided in subsection (c)").

53.     Pursuant to § 1226(a) and its implementing regulations, 8 C.F.R. § 1003.19(a), Petitioner is entitled to a bond hearing before an Immigration Judge to determine if his continued detention is justified.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner asks that this Court grant the following relief:

A. Issue a writ of habeas corpus ordering that Petitioner receive a prompt and constitutionally adequate bond hearing before this Court or, in the alternative, the Immigration Judge, at which the government bears the burden of establishing either that Petitioner is a flight risk, by the preponderance of the evidence, or a danger to the community, by clear and convincing evidence, and that no condition or combination of conditions can reasonably assure his future appearance and safety of the community. Where the government fails to meet its burden, this Court or the Immigration Judge will consider both Petitioner's ability to pay a bond and alternatives to bond in setting any conditions of release;

B. Issue a writ of habeas corpus ordering Petitioner's immediate release;

C. Issue a writ of habeas corpus declaring that Petitioner is subject to detention under 8 U.S.C. § 1226(a), and not § 1226(c), and order that he receive a prompt bond hearing before the Immigration Judge pursuant to § 1226(a) and its implementing regulations;

D. Order Respondents to pay Petitioner's attorneys' fees and costs; and

E. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Michael J. Wishnie
Muska Akbari, Law Student Intern*
Bill De La Rosa, Law Student Intern*
Camilo Duran, Law Student Intern*
Audrey Huynh, Law Student Intern*
Janis Jin, Law Student Intern*
Tarana Sable, Law Student Intern*
Michael K.T. Tan, *pro hac vice* †
Marisol Orihuela, *pro hac vice* †
Michael J. Wishnie (BBO#568654), Supervising Attorney
Jerome N. Frank Legal Services Organization
Yale Law School**
P.O. Box 209090
New Haven, CT 06520
(203) 436-4480
michael.wishnie@ylsclinics.org

* Motion for law student appearance forthcoming.
† Motion for admission *pro hac vice* forthcoming.
** This petition does not purport to present the views of Yale Law School, if any.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Renso Antonio Lino-Ramos** ) <br> ) <br> *Petitioner,* ) <br> ) <br> v. ) <br> ) <br> **Antone Moniz,** Superintendent ) <br> Plymouth County Correctional Facility, ) <br> **Dorothy Michaud,** Boston Field Office ) <br> Director, U.S. Immigration and Customs ) <br> Enforcement, ) <br> **Kristi Noem,** Secretary of the U.S. ) <br> Department of Homeland Security, and ) <br> **Pamela Bondi,** Attorney General of the ) <br> United States, ) <br> ) <br> *Respondents.* ) | Civ. No. _____ <br><br> February 26, 2025 <br><br> **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** <br><br> **(EXPEDITED HEARING REQUSTED)** |

**EXHIBITS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

| | |
|---|---|
| Ex. A | **Declaration of Renso Antonio Lino-Ramos** |
| Ex. B | **Declaration of Lilian Lino-Ramos** |
| Ex. C | **Declaration of Norma Torres** |
| Ex. D | **Plymouth County Correctional Facility Medical Records** |
| Ex. E | **Form I-261 dated December 6, 2024** |
| Ex. F | **Form I-213 dated March 5, 2024** |
| Ex. G | **Motion to Terminate and for the Appointment of Counsel dated December 10, 2024** |
| Ex. H | **Notice to Appear dated May 29, 2024** |
| Ex. I | **Second Motion to Terminate Proceedings dated February 18, 2025** |

15

**Ex. J**       **EOIR-42A dated February 7, 2025**

**Ex. K**       **Boston University School of Law and Prisoners' Legal Services of Massachusetts,** *Chronicling 25 Years of Violations: ICE Detention at Plymouth County Correctional Facility* **(Sept. 2024) (excerpt)**

**Ex. L**       **Order of the Immigration Judge dated June 10, 2024**

## CERTIFICATE OF SERVICE

I, Michael J. Wishnie, hereby certify that this

**PETITION FOR A WRIT OF HABEAS CORPUS**

**with Exhibits A-L** filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on February 26, 2025.

Dated: February 26, 2025        /s/ Michael J. Wishnie_____
                                Michael J. Wishnie (BBO#568654), Supervising Attorney