## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENSO ANTONIO LINO-RAMOS, <br><br>                      Petitioner, <br><br>       v. <br><br> ANTONE MONIZ, Superintendent of Plymouth County Correctional Facility <br><br>                    Respondent. | Civil Action No. 1:25-cv-10470-BEM |

## RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241

Respondent Antone Moniz ("Respondent"), Superintendent of the Plymouth County Correctional Facility ("PCCF"), by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Petitioner Renso Antonio Lino-Ramos' ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Dkt. 1. Respondent responds to the Petition, and Petitioner's motion for order to show cause, as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

Contrary to Petitioner's claim, his Congressionally mandated detention by U.S. Immigration and Customs Enforcement ("ICE") has not become unreasonably prolonged in violation of his due process rights and this Court should not order his release nor award him a bond

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response to habeas petition under Section 2254 Rules).

hearing.  ICE has detained Petitioner pursuant to 8 U.S.C. § 1226(c), Section 236(c) of the Immigration and Nationality Act ("INA") for the past nine-months due to his serious criminal record, including a recent conviction for Carrying a Firearm without a License.  By statute, such detention is mandatory while Petitioner challenges his removal from the United States before the Immigration Court and Board of Immigration Appeals ("BIA"), *i.e.* during his removal proceedings.  *Demore v. Kim*, 538 U.S. 510, 13 (2003); *Nielsen v. Preap*, 586 U.S. 392, 398 (2019) ("Congress mandated that aliens who were thought to pose a heightened risk be arrested and detained without a chance to apply for release on bond or parole.")

Petitioner makes two main arguments in his Petition, but both are without merit and should be rejected.  He asks this Court step into the role of an Immigration Judge ("IJ") and find that his firearms conviction is not a criminal conviction that triggers mandatory detention under Section 1226(c).  Doc. No. 1, ¶ 52.  That argument, however, hinges entirely on the question of his removability—i.e., whether his conviction renders him removable pursuant to the INA.  Where, as here, an individual's detention claim overlaps with the question of his removability, federal law expressly divests district courts of jurisdiction to consider the claim—instead, he may only seek review before an IJ, the BIA, and then judicial review via a petition for review with a circuit court of appeals.  *See Alphonse v. Moniz*, No. CV 21-11844-FDS, 2022 WL 279638, at *3–7 (D. Mass. Jan. 31, 2022) ("*Alphonse I*") (Finding no jurisdiction to consider similar argument regarding applicability of Section 1226(c)).

Petitioner also claims, if Section 1226(c) does mandate his detention, that his detention without a bond hearing has become unreasonably prolonged so as to require his immediate release or a bond hearing where ICE must justify his continued detention.  Doc. No. 1, ¶ 2. The Supreme Court, however, has upheld the constitutionality of detention without a bond hearing under Section

1226(c) for the "limited period of [a criminal noncitizen's] removal proceedings," *Demore*, 538 U.S. at 531, and Petitioner's as-applied challenge fails because he has not identified any individual circumstances that show his detention has become unreasonable to warrant a different outcome.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Immigration and Criminal History.

Petitioner is a native and citizen of Honduras who entered the United States without inspection or admission in 2014. *See* Declaration of Assistant Field Office Director, Keith Chan ("Chan Decl.") ¶ 7, attached as Exhibit A.  In 2017, ICE arrested and detained Petitioner after he came to ICE's attention due to various pending criminal charges. *Id.*, ¶¶ 9, 24.  In July of 2017, Petitioner's application for relief from removal was granted by an IJ and he became a Lawful Permanent Resident. *Id.*, ¶¶ 10-11.

On or about June 8, 2018, Petitioner was charged in the Lynn District Court for the offenses of Carrying a Loaded Firearm, defacing a Firearm Serial number and Carrying a Firearm without a Permit. *Id.*, ¶ 25.  On or about October 16, 2023, Petitioner was convicted of these charges. *Id.*  On or about March 7, 2022, Petitioner was charged in the Lynn District Court, of the offenses of Breaking and Entering with the intent to Commit a Felony, and Attempt to Commit a Crime. *Id.*, ¶ 26.  On or about October 16, 2023, Petitioner was convicted of these charges. *Id.*  On or about April 10, 2023, Petitioner was charged in the Chelsea District Court for the offenses of Carrying a Loaded Firearm, Possession of Ammunition and a Firearm without a Permit, Improper Storage of a Firearm, Hindering Police. *Id.*, ¶ 27.  These charges were dismissed. *Id.*

On May 29, 2024, ICE arrested Petitioner upon completion of his state court sentence and issued a Notice to Appear ("NTA") in Immigration Court, thus initiating removal proceedings

against him based upon two grounds of removability under the INA. *Id.*, ¶ 13. Petitioner's first hearing was held in Immigration Court on June 10, 2024. *Id.*, ¶ 14. Petitioner appeared in Immigration Court on July 1, 2024 and August 5, 2024 and sought additional time at each hearing to obtain counsel. *Id.*, ¶ 15. On September 30, 2024, Petitioner again appeared in Immigration Court without counsel and the IJ provided Petitioner with an application for relief from removal to complete after finding him removable from the United States. *Id.*, ¶ 16.

Petitioner returned to Immigration Court on November 4, 2024, still without counsel, and without his application for relief from removal completed. *Id.*, ¶ 17. On December 6, 2024, ICE amended its charge of removability against Petitioner by withdrawing the charges on the NTA and adding a new ground of removability under 8 U.S.C. § 1227(a)(2)(C) based upon Petitioner's October 16, 2023 conviction for Unlicensed Carrying of a Firearm. *Id.*, ¶ 18. Petitioner again appeared *pro se* on December 16, 2024. *Id.*, ¶ 19. Counsel appeared on Petitioner's behalf on January 27, 2025 and requested additional time to complete his application for relief from removal. *Id.*, ¶ 20. Petitioner filed his application on February 10, 2025 and also filed a motion to terminate his removal proceedings on the theory that his firearms conviction does not render him removable from the United States. *Id.*, ¶¶ 21-22. Petitioner's final hearing on his application for relief from removal is scheduled for March 28, 2025 and his motion to terminate remains pending. *Id.*

### B. Procedural History.

Petitioner filed his Petition for Writ of Habeas Corpus on February 26, 2025. Doc. No. 1. Petitioner asks this Court to declare that he is not subject to detention pursuant to 8 U.S.C. § 1226(c) because he believes he is not deportable under the predicate ground of removability in the INA. *Id.*, ¶¶ 49-53. Petitioner also claims that his detention without a bond hearing violates the

Fifth Amendment's Due Process Clause. *Id.*, ¶ 2. As relief, Petitioner asks this Court to order his immediate release, or alternatively, that the Court order he receive a constitutionally adequate bond hearing before the U.S. District Court or the Immigration Court. *Id.*, PRAYER FOR RELIEF.

On February 28, 2028, the Court ordered the Respondent's response to the Petition filed by March 5, 2025. Doc. No. 12.

## II.    JURISDICTION AND STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions. To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## III.    ARGUMENT

This Court lacks jurisdiction to consider Petitioner's claim that his criminal conviction does not render him removable from the United States and subject to detention under Section 1226(c). Additionally, Petitioner's mandatory detention during his removal proceedings does not offend the Constitution and therefore his request for release or a bond hearing must be denied.

### A.  This Court Lacks Jurisdiction to Decide Petitioner's Challenge to the Applicability of 8 U.S.C. § 1226(c).

ICE has charged Petitioner as removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(C) which provides that aliens convicted of certain firearms offenses are deportable.

Petitioner contends this charge of removability does not apply to him, and he therefore filed a motion to terminate his removal proceedings in Immigration Court. Doc. No. 1, ¶¶ 31-32. Petitioner brings this same complaint to this Court, stating that he is not removable as charged by ICE and therefore he "is not subject to detention under § 1226(c)". *Id.*, ¶¶ 51-52.

The district court lacks jurisdiction to consider Petitioner's claim which must be raised administratively before being ultimately decided by the First Circuit. *See Flores-Powell v. Chadbourne*, 677 F.Supp.2d 455, 468 (D. Mass. 2010) ("This Court lacks jurisdiction to review the Immigration Court's determination that [a noncitizen's] conviction requires mandatory detention"); *Alphonse I*, 2022 WL 279638, at *6 ("By its terms, § 1252(b)(9) forecloses habeas relief here" in response to petition claiming Section 1226(c) was inapplicable to petitioner.); *Zaoui v. Horgan*, No. 13-11254-DPW, 2013 WL 5615913, at *1 (D. Mass. Aug. 23, 2013) (same).

"The jurisdiction-channeling provision of the [INA] states that 'the *sole and exclusive* means for judicial review of an order of removal' is 'a petition for review [PFR] filed with an appropriate court of appeals.'" *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020) (quoting 8 U.S.C. § 1252(a)(5), emphasis added). Another provision—codified at § 1252(b)(9) and commonly referred to as the jurisdictional bar—"strips federal courts of jurisdiction to decide legal and factual questions *arising from* an alien's removal in any other context, including on a petition for a writ of habeas corpus." *Id.* (emphasis added); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section").

Thus, an individual seeking to challenge either his removal order *or* any issue "arising from any action taken or proceeding brought to remove [him]" must do so through a PFR filed with a circuit court of appeals. *See Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007). He cannot sidestep or

duplicate that review process by also filing a habeas petition in district court raising issues that are being, or could have been, litigated in the removal proceeding.

In determining whether a claim "aris[es] from" a noncitizen's removal—and thus falls within the scope of the jurisdictional bar—courts in this circuit ask whether the claim is "independent of, or wholly collateral to, the removal process." *Id.* at 11. If it is, then the jurisdictional bar does not apply. For instance, "claims which cannot be raised in removal proceedings and eventually brought to the court of appeals on a petition for review are 'independent of, or wholly collateral to, the removal process.'" *Gicharu*, 983 F.3d at 16 (quoting *Aguilar*, 510 F.3d at 11).

Petitioner's claim that Section 1226(c) does not apply to him is a claim that can be raised in removal proceedings and therefore this Court lacks jurisdiction to consider this aspect of his Petition. As another session of this Court has held, "the question of the *applicability* of the mandatory detention statute to [a noncitizen's] offense, unlike questions regarding the *length* of detention, is not independent of removal." *Flores-Powell*, 677 F.Supp.2d at 467 (emphasis added). Here, the question of whether Petitioner is subject to mandatory detention is fully intertwined with the question of whether he is removable from the United States. Accordingly, § 1252(b)(9) deprives district courts of "jurisdiction to decide whether [a detainee's] offense falls within the mandatory detention statute." *Id.* at 466.

Petitioner's improper detention claim plainly "aris[es] from" the removal process. Put another way, when a noncitizen—such as Petitioner (a Lawful Permanent Resident)—has been convicted of certain crimes, those predicate offenses serve as the basis for both his mandatory detention and his removal from the country. Thus, claims regarding whether prior convictions qualify as predicate offenses are naturally "part and parcel of the removal proceeding itself."

*Aguilar*, 510 F.3d at 13; *see also Flores-Powell*, 677 F.Supp.2d at 468 ("[I]n this respect, unlike other possible challenges to detention, the mandatory detention [decision] and the order of removal are intertwined rather than independent").

More recently, in *Alphonse I*, Chief Judge Saylor rejected a claim identical to that raised before this Court, finding itself lacking jurisdiction over the claim that Section 1226(c) did not apply. 2022 WL 279638, at *4. The Court explained that where "the questions of law and fact are the same for the questions of removability and mandatory detention, an alternative interpretation of § 1252(b)(9) is not possible." *Id.* The Court further held that the application of Section 1252(b)(9) to strip a district court of jurisdiction to consider the applicability of § 1226(c) did not violate the Suspension Clause since the challenge to removability could be raised administratively and ultimately to the First Circuit. *Id.* at *7

Petitioner argues that § 1226(c) does not apply because his firearms conviction does not qualify as a predicate offense. Doc. No. 1, ¶ 51. But this is the same argument that he is making through a motion to terminate currently pending before the IJ. *Id.*, ¶¶ 31-32. Thus, deciding whether Petitioner's conviction warrants mandatory detention would necessarily overlap with deciding whether his conviction subjects him to removal. In this circumstance, Section 1252(b)(9) plainly restricts judicial review to the court of appeals—following review before an IJ and the BIA. As such, the Court lacks jurisdiction over Petitioner's claim that he is not subject to detention under Section 1226(c) and this portion of his Petition must be denied.

### B. Petitioner has not Met his Burden of Establishing that his Mandatory Detention Pursuant to Section 1226(c) violates the Due Process Clause.

The Supreme Court has upheld the constitutionality of mandatory detention pursuant to Section 1226(c). *Demore*, 538 U.S. at 523 (The "Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.").

Petitioner's detention does not violate the Constitution when analyzed under the frameworks provided by the Supreme Court, the First Circuit, and this district court.

      1. ***Mandatory Detention and the Due Process Clause.***

As explained below, the Supreme Court has upheld the constitutionality of mandatory detention under Section 1226(c) and has also offered a framework to analyze whether prolonged detention under this statute remains constitutional. The First Circuit and this Court have also considered claims of prolonged detention under this statute as described in greater detail below.

Under 8 U.S.C. § 1226(c), ICE "shall take into custody any alien" who is deportable for the commission of various criminal offenses and must maintain custody of such individual during their removal proceedings without an opportunity for release on bond.[2]  This provision "gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made" in removal proceedings.  *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).  Thus, although Section 1226(c) only permits detention for a finite period of time (i.e., during removal proceedings), it does not include an implicit time limit on how long that period may last.  *See id.* at 304 ("the Government's detention authority under § 1226(c)" ends at "the conclusion of removal proceedings," and not "some arbitrary time limit devised by courts").

In *Demore*, the Supreme Court held that Section 1226(c) is constitutional on its face and upheld the mandatory detention, without bond, of a criminal alien who had already been detained for six months.  538 U.S. at 531.  The Court explained that "[d]etention during removal

---

     [2] Section 1226(c)(2) provides a narrow exception to this provision's categorical detention command which is not applicable here: the Government "may release" an alien detained under Section 1226(c) "only if" it decides that doing so is "necessary" for witness-protection purposes.

proceedings is a constitutionally permissible part of that process." *Id.; Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character.").   As to Due Process concerns with such detention, the Court recognized that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (citations omitted).

The *Demore* Court concluded that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Id.* at 513.  The Supreme Court noted that Congress had before it a multitude of evidence in support of its determination to mandate detention of criminal noncitizens who fall within the parameters of § 1226(c), including: (1) "criminal aliens who were deported swiftly [had] reentered the country illegally in great numbers"; (2) "[the] near-total inability to remove deportable criminal aliens imposed more than a monetary cost on the Nation"; (3) "deportable criminal aliens who remained in the United States often committed more crimes before being removed"; (4) "one of the major causes of the [the government's] failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings"; (5) "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight"; and (6) "evidence suggest[ed] that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." *Id.* at 518-33.

The Court upheld the mandatory way in which Section 1226(c) addresses this problem, explaining that Congress can legislate based on "reasonable presumptions and generic rules," *id.*

at 526 (citation omitted), and that vesting the government with case-by-case discretion over who to detain versus who to release might not prevent "large numbers of deportable criminal aliens skipping their hearings." *Id.* at 528. The Supreme Court thereafter proceeded to uphold the constitutionality of 8 U.S.C. § 1226(c), repeatedly noting, as it had several times before, that detention of a criminal alien during ongoing removal proceedings is constitutional. *Id.* at 513 ("We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that [such] persons […] be detained for the brief period necessary for their removal proceedings."); *id.* at 526 ("[T]his Court's longstanding view [is] that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings") (citations omitted).

As such, based on *Demore*, there is no dispute that ICE can—indeed, must—detain criminal aliens such as Petitioner during their removal proceedings without providing bond hearings, and that such detention, as a matter of course, complies with the Constitution.

The Supreme Court in *Demore* did, however, state that a criminal alien detained under 8 U.S.C. § 1226(c) may suffer a due process violation in limited instances and set forth the framework to analyze such a claim. Notably, the Supreme Court held that detention of criminal aliens under 8 U.S.C. § 1226(c) is constitutional so long as detention serves its purported immigration purpose. *Id.* at 527-28 (stating that detention "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed").

The Supreme Court also explained that a criminal alien's litigation choices, including requests for continuances and appeals, should not be held against the Government in evaluating

whether a detainee held under Section 1226(c) suffers a due process violation based on length of detention. *Id*. at 530-31 ("Respondent was detained for somewhat longer than the average […] but respondent himself had requested a continuance of his removal hearing."); *id*. at n. 14 ("As we have explained before, however, 'the legal system ... is replete with situations requiring the making of difficult judgments as to which course to follow,' and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (citations omitted).

Justice Kennedy's concurrence in *Demore* provided further guidance on when a criminal alien detained under Section 1226(c) could be entitled to a bond hearing as a matter of due process, explaining that a hearing could be required "if the continued detention became unreasonable or unjustified." *Id*. at 532 (Kennedy, J., concurring). In Justice Kennedy's view, because "the Due Process Clause prohibits arbitrary deprivations of liberty," the constitutionality of detention largely depends on its justifications. *Id*. If detention becomes unreasonably prolonged, a bond hearing could be required to confirm that the reasons for that individual's continued detention remain legitimate: "Were there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, *but to incarcerate for other reasons*." *Id.* at 532-33 (emphasis added).

The U.S. Court of Appeals for the First Circuit has recently "adhere[d] to the notion that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under [S]ection 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (internal alterations and citation omitted). The First Circuit rejected the contention, however, that the Due Process Clause required a bond hearing whenever a criminal alien has been detained under § 1226(c) for more than six months. *Id.* at 7. Similar to Justice Kennedy's concurrence in *Demore,*

the First Circuit acknowledged, however, that the to ensure detention remained constitutional, a hearing might be required "to see if continued detention is reasonably necessary to serve the statute's purposes." *Id.* at 8.  Determining whether the Due Process Clause requires a bond hearing will involve a "fact-specific analysis that turns on each noncitizen's individual circumstances." *Id.* at 6 (internal quotation marks and citation omitted); *see also id. at* 9 ("any such relief must be adjudicated on an individual basis.").

At the same time, the First Circuit declined to prescribe any balancing test or set factors that must be considered in gauging whether detention under Section 1226(c) has become unreasonably prolonged. *Id.* at 8, 11-12.  The district court in *Reid* had held in determining whether detention has become "unreasonably prolonged," courts should consider the following "nonexclusive" factors:  "[1] the total length of the detention; [2] the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); [3] the period of the detention compared to the criminal sentence; [4] the promptness (or delay) of the immigration authorities or the detainee; and [5] the likelihood that the proceedings will culminate in a final removal order." *Reid v. Donelan,* 390 F. Supp. 3d 201, 219 (D. Mass. 2019), *aff'd in part, vacated in part, remanded,* 17 F.4th 1 (1st Cir. 2021).  Of these factors, the district court concluded that "[t]he total length of detention is the most important factor," and "detention is likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics." *Id.*

The First Circuit, however, vacated the portion of the district court's opinion setting forth the five *Reid* factors, concluding that the district court lacked jurisdiction to announce generally applicable factors that must be considered in every case. *Reid*, 17 F.4th at 11-12.  The First Circuit recognized that while "having clear standards for determining whether and when a [S]ection

1226(c) detainee need be released pending the conclusion of the detainee's removal proceedings would make life simpler," these standards must be developed through other means, such as "agency regulations" or potentially "case-by-case adjudication." *Id.*

### 2. *The Due Process Clause does not require the government to hold a bond hearing to continue Petitioner's detention.*

Petitioner cannot meet his burden to demonstrate a due process violation as his detention continues to serve the statutory "purpose of preventing deportable criminal aliens [like him] from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, [he] will be successfully removed." *Demore*, 538 U.S. at 528.

The Government has not unreasonably delayed pursuing and attempting to complete Petitioner's removal proceedings. Petitioner cannot demonstrate that his detention has become "unreasonable or unjustified" rising to the level of a due process violation pursuant to *Demore. Id.* at 532-33. Petitioner has no evidence that his detention continues "not to facilitate deportation, or to protect against flight or dangerousness, *but to incarcerate for other reasons.*" *Id.* at 532. (emphasis added). Instead, Petitioner's ongoing detention "serve[s] [the] purported immigration purpose" for which 8 U.S.C. § 1226(c) was enacted as his detention prevents Petitioner from continuing to engage in the serious and frequent acts of criminal activity that he has committed over the course of his approximate ten years in the United States. Further, his detention protects against flight as Petitioner faces deportation from the United Staes if he is unsuccessful in his challenge to removal. The fact that his detention has reached nine months does not change the constitutionally permissible basis for his continued custody.

In deciding whether a criminal alien's detention has become unreasonably prolonged, courts do not ask whether it has lasted "too long" in the abstract. *Reid*, 17 F.4th at 9 ("[S]ix months of detention did not on its own necessarily trigger a constitutional hearing or bond hearing").

Instead, courts ask whether continued detention is reasonable "*in relation to*" the statutory purpose of detention—i.e., to ensure the individual's presence for removal and to prevent continued criminal activity. *Id.* at 8. Put another way, the significance of a detainee's *length* of detention depends largely on the *reasons for* that length. If removal proceedings have moved along promptly without hindrance from immigration authorities or the Immigration Court, there is generally no reason to doubt that the individual's continued detention fully aligns with the statutory purpose of categorical detention. If, however, a detainee's proceedings simply languish, this may suggest that his detention—while reasonable at the outset—is *now* more readily attributable to delays, inattention, or even difficulty obtaining a removal order.

Here, ICE promptly arrested and detained Petitioner upon his release from state custody and filed the NTA with the Immigration Court without delay to initiate removal proceedings. Chan. Decl., ¶ 13. ICE attorneys have not sought continuances of Petitioner's removal proceedings and IJs handling his proceedings have scheduled his appearances without delay. *Id.*, ¶¶ 14-21. Petitioner claims that ICE has caused unreasonable delay to his proceedings by adding a new ground of removability based upon his firearms offense, but per 8 C.F.R. § 1240.10(e), "[a]t any time during the proceeding, additional or substituted charges of … deportability … may be lodged by DHS in writing." In any event, Petitioner acknowledges he requested, and received, multiple continuances between June 2024 and January 2025 for counsel to appear on his behalf. Petitioner did not file his application for relief from removal until February 10, 2025, and therefore his claim that ICE's addition of a new ground of removability in December 2024 "effectively required [his] removal proceedings to begin anew" is without merit. Doc. No. 1-3 at 19.

Petitioner's time in detention is simply the result of his own litigation decisions, including his continuance requests (which spanned approximately seven months) and his attempts to seek

relief from removal.  While Petitioner has the legal right to request continuances and challenge his removability, the Supreme Court has repeatedly stated that he cannot, in turn, rely on such delays incurred during such to establish a due process violation.  *See Demore*, 538 U.S. at 530 n. 14 ("As we have explained before, however, "the legal system ... is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (citations omitted); *id*. at 530-31 ("Respondent was detained for somewhat longer than the average […] but respondent himself had requested a continuance of his removal hearing.").

In sum, pursuant to *Demore* and *Reid*, Petitioner has not demonstrated that his detention is unreasonable or unjustified as it continues to serve the statutory purpose of preventing further criminal activity and ensuring his presence for removal.  As such, his detention does not violate his rights under the Fifth Amendment's Due Process Clause and his Petition must be denied.

### 3.   *Petitioner has not met his burden of demonstrating a due process violation pursuant to the Reid I framework.*

While Respondent contends that Petitioner's detention remains reasonable under *Demore* and *Reid* because it continues to serve valid immigration purposes and no further analysis is required, Respondent nonetheless responds to Petitioner's claims regarding entitlement to release or a bond hearing under the district court's *Reid* framework.

As Chief Judge Saylor explained, the *Reid* factors "are not binding on this Court" but nonetheless do "provide a reasonable framework to assess whether continued detention under 1226(c) is reasonable." *Alphonse II*, 635 F.Supp.3d at 35.  Indeed, courts within this district have continued to apply the *Reid* factors to analyze whether a criminal alien's detention without a bond hearing has become unreasonable.  *See e.g., Mendoza v. Moniz*, No. CV 23-11768-MJJ, 2023 WL 7017020, at *3 (D. Mass. Oct. 23, 2023), *vacated as moot*, No. 23-1891, 2024 WL 1776364 (1st

Cir. Mar. 5, 2024); *Alphonse I*, 2022 WL 279638 at \*9; *Jonalson v. Moniz*, No. CV 22-10083-NMG, 2022 WL 17651986, at \*4 (D. Mass. Aug. 2, 2022); *Martinez Lopez v. Moniz*, No. CV 21-11540-FDS, 2021 WL 6066440, at \*5 (D. Mass. Dec. 22, 2021); *Lafortune v. Mayorkas*, No. 1:22-cv-11624-DJC (D. Mass. Apr. 20, 2023) (Dkt. No. 16).  An analysis of these factors demonstrates that due process does not require Petitioner receive a bond hearing at this time.

    **a.  The total length of Petitioner's detention remains reasonable.**

The length of Petitioner's detention, approximately nine months as of this filing, does not warrant imposition of habeas relief from this Court.  The *Reid* district court reasoned that the first and "most important" factor is the "total length of detention" and that detention beyond one year is likely to be unreasonable, with an allowance for delays due to a noncitizen's dilatory tactics. *Reid*, 390 F. Supp. 3d at 219.  As such, Petitioner's detention remains reasonable under this first factor.  Petitioner cites *Da Graca v. Souza*, No. 20-CV-10849-PBS, 2020 WL 2616263 (D. Mass. May 22, 2020) in support of his claim that his detention is unreasonably prolonged.  Doc. No. 1-3 at 16.  Judge Saris, however, in *Da Graca* stated that the petitioner, detained for eight-months, was "not entitled to a presumption of unreasonableness at this time."  2020 WL 2616263 at \*3.  Judge Saris did order a bond hearing, but the driving factor was the COVID-19 pandemic and the petitioner's documented vulnerabilities "to this deadly virus."  *Id.* at \*4.  As such, *Da Graca* does not support Petitioner's claim.[3]

---

[3] Petitioner's citation to *Garcia v. McDonald*, No. 16-CV011673-ADB, 2016 WL 86779219 (D. Mass. Sept. 23, 2016) also does not support his claim as the petitioner in that case was subject to a final order of removal and his detention was controlled by 8 U.S.C. § 1231 as recent Supreme Court decisions make clear. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022).

Even if Petitioner's immigration detention surpasses one-year, the "length of detention alone is not dispositive." *Alphonse I,* 2022 WL 104800100, at *5.  Further analysis as to why the detention has passed one-year, and a review of the other *Reid* factors, is still required.  *Id.*  To that end, courts within this district have previously—and recently—rejected *Reid* claims brought by criminal aliens who have been detained for more than one year.  *See, e.g.*, *Mendoza*, 2023 WL 7017020, at *3 (seventeen months at time of opinion); *Silva v. Moniz*, No. 20-cv-12255-DJC (D. Mass. October 28, 2021) (Doc. No. 26) (detained for 27 months); *Dos Santos v. Moniz*, No. CV 21-10611-PBS, 2021 WL 3361882, at *4 (D. Mass. May 18, 2021) (finding that "mandatory detention [exceeding sixteen months] … has not been unreasonably prolonged"); *Martinez Lopez*, 2021 WL 6066440, at *5 (detention over thirteen months did not independently warrant a bond hearing as "[h]abeas relief may be denied when the remaining factors favor the government."); *Alphonse I,* 2022 WL 279638 at *9 (same); *Lafortune*, 1:22-cv-11624-DJC at Doc. 16 (detention for over 19 months at time of decision).

Petitioner nonetheless claims that the length of his detention "is even more unreasonable in light of its impact on his family and health."  Doc. No. 1-3 at 17.  As this Court has explained, however, "it is likely that all, or virtually all, immigration detention orders place a burden on the family of the alien.  That burden is insufficient to merit a finding of unreasonableness." *Alphonse I,* 2022 WL 279638 at *12.  And while the COVID-19 pandemic was considered in *Da Graca* as a factor to consider, Petitioner has failed to cite any decision favorably considering a similar claim regarding the impact to his mental health as relevant under this analysis.  *See Omar v. Moniz,* No. CV 20-10846-PBS, 2020 WL 2560988, at *3 (D. Mass. May 20, 2020) ("[T]he Government has a legitimate objective in detaining Petitioner, whose lengthy criminal history includes several violent

attacks … Balancing the risk to Petitioner's health against the Government's interest in his detention, there is no Due Process violation at this time.").

Ultimately, even if Petitioner's detention surpasses one year, his detention continues to bear a strong relationship to the statutory purpose of categorical detention.  Further, his proceedings were initiated without delay, have moved along promptly, and his case has not languished.  As such, this first factor does not favor habeas relief.

**b.  The conclusion of Petitioner's administrative proceedings is foreseeable.**

Next, the *Reid* analysis considers "the foreseeability of proceedings concluding in the near future."  390 F. Supp. 3d at 219.  Here, Petitioner recently filed a motion to terminate that is pending with the Immigration Court that if allowed, would lead to the dismissal of his removal proceedings and his release from detention if ICE does not appeal such decision. Additionally, Petitioner's final hearing on his application for relief from removal is scheduled for March 28, 2025.  If the IJ grants his application for relief from removal, Petitioner would be released from detention if ICE decides not to appeal the IJ's decision.  If the IJ denies Petitioner's application for relief from removal, Petitioner could decide not to appeal such decision and therefore his proceedings would conclude and his release from detention would occur quickly.  As such, the conclusion of Petitioner's administrative proceedings is conceivably foreseeable and this factor favors the government or is at least neutral pending the outcome of Petitioner's motion to terminate and his hearing on March 28, 2025.

**c.  Petitioner's immigration detention compared to his criminal sentence.**

The *Reid* district court also stated that courts should also consider "the period of the [immigration] detention compared to the criminal sentence." 390 F. Supp. 3d at 219.  This factor has continued to be considered by courts in this District.  As recently explained, the "length of detention by immigration authorities may become unreasonable when it is grossly disproportionate

to the length of the detainee's criminal sentence." *Alphonse II*, 635 F.Supp.3d at 37.  Petitioner

acknowledges that he "has spent nine months in immigration detention as compared to the twenty-

one and a half months he spent in criminal custody" because of his underlying criminal

convictions.  Doc. No. 1-3 at 17.  This factor favors the Government by a significant margin.

### d. Promptness of immigration authorities and detainee.

"[T]he promptness (or delay) of the immigration authorities or the detainee" can also

inform the analysis.  *Reid*, 390 F. Supp. 3d at 219.  This factor favors the Government or is at least

neutral.  While Respondent is aware that "detention can still be unreasonably prolonged even

where the government did not delay proceedings," *see Neziri v. Johnson*, 187 F. Supp. 3d 211, 216

(D. Mass. 2016), in analyzing this factor, courts have found it to be "nonetheless significant that

the government appears to have been reasonably diligent" in moving along removal proceedings.

*See Martinez Lopez*, 2021 WL 6066440, at *7; *Alphonse I*, 2022 WL 279638, at *11.

Here, "the Government has not unreasonably delayed Petitioner's proceedings, nor has his

case languished on a docket."  *See Dos Santos,* 2021 WL 3361882, at *4.  Instead, ICE promptly

filed Petitioner's NTA to initiate proceedings, ICE attorneys did not seek any continuances, and

the IJ has kept Petitioner's case proceeding expeditiously.  *See Alphonse II*, 635 F.Supp.3d at 38.

Respondent disputes Petitioner's claim that "the government has caused significant and undue

delay" in his immigration proceedings.  Doc. No. 1-3 at 18.  As explained, Petitioner's contention

that his removal proceedings had to "begin anew" because ICE filed a new charge of removability

prior to the time he obtained counsel and submitted his application is baseless.

Petitioner sought and received numerous continuances between June 2024 and January

2025 to obtain counsel and therefore bears significant responsibility for the length of his detention.

*See Campbell v. Moniz*, No. 20-cv-10697-PBS, 2020 WL 2129594, at *6 (D. Mass. May 5, 2020)

("He has been detained for eleven months, but much of the delay in his case was at his own

request."). Petitioner, of course, is entitled to seek representation in removal proceedings, to challenge removal, and to file appeals of adverse decisions.[4] *See Alphonse II*, 635 F.Supp.3d.at 35 (collecting cases). But, in the instant matter, Petitioner's extension requests have easily added more than six months to his detention, and "due process concerns are unlikely to be triggered where, as here, the delays are the result of [petitioner's] exercise of procedural remedies … and not any delay sought on the government's part." *Lafortune*, 1:22-cv-11624-DJC at Doc. 16; *see also Sosa Rodriguez v. Feeley*, 2020 WL 7346139, at *10 (W.D.N.Y. Dec. 15, 2020) (explaining that the petitioner could not expect his extension requests "to bolster his due process claim [because] [i]f a petitioner could delay enough and thereby earn release, he could defeat the process."); *Misquitta v. Warden Pine Praire ICE Processing Ctr.*, 353 F.Supp.3d 518, 527 (W.D. La. 2018) ("Where removal proceedings are delayed solely by a party's good faith exercise of its procedural remedies – whether by the petitioner or the government – continued detention is unlikely to trigger due process concerns in most cases because continued detention … still serves the purpose of the statute.").

Petitioner's seven-month long search for counsel has resulted in the length of his detention, not any action, or inaction, from the Government. This factor does not weigh in Petitioner's favor as immigration authorities and the Immigration Court has acted with diligence and expediency.

---

[4] To be clear, none of this is to say that Petitioner acted in bad faith by pursuing multiple continuances to obtain counsel. *Cf. Brown v. Gillen*, No. 10-cv-11304, 2010 WL 3946318, at *3 (D. Mass. Oct. 8, 2010) ("The Court need not find that [petitioner] acted in bad faith to determine that the government has detained him legally."). His continued confinement is a consequence of—not a punishment for—doing so. As the Supreme Court made clear, the legal system "is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." *Demore*, 538 U.S. at 530 n.14 (citation omitted).

e. **Likelihood that proceedings will culminate in final removal order.**

The final *Reid* factor considers "the likelihood that the proceedings will culminate in a final removal order." *Reid*, 390 F. Supp. 3d at 219.  This factor is neutral at this stage as Petitioner's motion to terminate his removal proceedings remains pending and his final hearing on his application for relief from removal is scheduled for later this month.  District courts have consistently looked to the prior ruling in the detainee's removal proceedings—usually the IJ's decision—as "the best guide in determining the likelihood that the proceedings will conclude in a final removal order." *Tahlil v. Moniz*, No. 20-cv-10847-PBS, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020).  Even when faced with an argument in the habeas petition as to the strength of an application for relief for removal or an appeal of the removal order, courts nonetheless find it "prudent to look to the immigration judge's decision" to determine the outcome of this factor. *Martinez Lopez*, 2021 WL 606640, at *7.   As such, with no decision yet from the IJ as to Petitioner's removability and his application for relief from removal, this factor is neutral.

In sum, under the *Reid I* framework, Petitioner's detention remains constitutionally authorized without a bond hearing.  He has been detained for nine months which has been deemed to be a presumptively reasonable period within this District.  This period pales in comparison to the twenty-one months he spent in criminal custody.  Petitioner sought multiple continuances over a six-month period to obtain counsel and to file his application which has contributed significantly to his time in detention.  The Government has not delayed his removal proceedings and significant developments in his case are likely within the next thirty days as he is scheduled for a final hearing on his application.  It is conceivable that Petitioner could be released from detention after his final hearing and that his removal proceedings will conclude.  As such, his claim for release or for a bond hearing should be denied under the *Reid I* analysis.

### 4. Petitioner has not met his burden of demonstrating a due process violation pursuant to the Mathews test.

While Petitioner asks this Court to analyze the constitutionality of his detention pursuant to the three-part balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court, the First Circuit, and this District Court have never applied this test in response to a habeas petition from a criminal alien detained pursuant to Section 1226(c). Indeed, the First Circuit in *Reid* declined to accept an invitation to use the *Mathews* test, much to the dissent's consternation. *Reid*, 17 F.4th at 8-9, 15. However, even if this Court decided to utilize the *Mathews* framework, Petitioner's challenge would nonetheless fail.

Petitioner is correct that the First Circuit utilized the *Mathews* framework in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-28 (1st Cir. 2021) to evaluate a different procedural due process question regarding the proper allocation of the burden of proof at an bond hearing for an individual detained under the discretionary detention statute, 8 U.S.C. § 1226(a). But, the First Circuit stressed the differences between discretionary Section 1226(a) detention (applicable in *Hernandez-Lara*) and mandatory Section 1226(c) detention (applicable here). *Id.* at 35 (in upholding the constitutionality of Section 1226(c)'s mandatory detention, the Supreme Court in *Demore* explained that Section 1226(c) "specifically applies to a class of noncitizens who had already been convicted (beyond a reasonable double) of committing certain crimes."); *id.* at 36 ("Unlike [S]ection 1226(c), [S]ection 1226(a) applies to a wide swath of noncitizens, many of whom … have no criminal record at all.").

As such, simply because the First Circuit utilized the *Mathews* test to determine that the Government bore the burden of proof in a Section 1226(a) bond hearing does not mean that this Court should review Petitioner's detention under this same test, especially when the Supreme Court in *Demore* has already provided a framework to consider whether detention has become

23

"unreasonable or unjustified" rising to the level of a due process violation. 538 U.S. at 532-33. Using that reasoning, the First Circuit declined to use the *Mathews* framework in *Reid,* noting the existence already of "the much more direct message strongly implied by *Demore*" as to the proper means to review Section 1226(c) detention's constitutionality. *Reid*, 17 F.4th at 9; *Banyee v. Garland,* 115 F.4th 928, 933 (8th Cir. 2024) (Declining to utilize the *Mathews* test in reviewing the constitutionality of Section 1226(c) detention, explaining that *"Zadvydas* and *Demore* have already done whatever balancing is necessary" in providing guidance that detention remains constitutional as long as it serves the statutory purpose.)

And while the U.S. Court of Appeals for the Second Circuit did recently apply the *Mathews* framework in response to a Section 1226(c) petition, the prevailing approach by courts around the country is to review such claims using a multi-factor analysis, not the *Mathews* test. *See e.g., Appiah v. Lowe*, No. 3:24-CV-2222, 2025 WL 510974, at *4 (M.D. Pa. Feb. 14, 2025) (Applying factors from *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020)); *Martinez v. Ceja*, -- F.Supp.3d --, 2024 WL 5168143, at *4-7 (D. Colo. Dec. 19, 2024) (Using multi-factor test to review ongoing detention); *Sarr v. Scott*, No. 2:24-CV-01293-RAJ-BAT, 2025 WL 388652, at *6 (W.D. Wash. Feb. 4, 2025) (same); *Abreu v. Crawford,* No. 1:24-CV-01782-MSN-WBP, 2025 WL 51475, at *5 (E.D. Va. Jan. 8, 2025) (same); *Rincon v. U.S. Dep't of Homeland Sec.*, No. 5:24-CV-12, 2024 WL 4860822, at *4 (S.D. Ga. Oct. 30, 2024), *report and recommendation adopted,* No. 5:24-CV-12, 2024 WL 4858595 (S.D. Ga. Nov. 21, 2024) (same).

As such, this Court should reject Petitioner's request to analyze his detention using the *Mathews* test as this Court already has the necessary framework to review the constitutionality of Section 1226(c) mandatory detention based on *Demore* and *Reid* or through the lens of the *Reid* factors.

Even if this Court were to apply the *Mathews* balancing test, the result would be the same: the balance of these three factors leads to the conclusion that Petitioner's detention has not violated due process. In *Mathews*, the Supreme Court relied on three factors in assessing the due process claim at issue: (1) the private interest at stake; (2) the risk of an erroneous deprivation of such interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest. 424 U.S. at 335.

As to the first factor, certainly, Petitioner has an interest in avoiding detention, but a criminal alien's interest is lessened by the fact that "detention pending a determination of removability" is inherently temporary and has an "obvious termination point." *Demore*, 538 U.S. at 529. Further, Petitioner's liberty interest is diminished because he is a criminal alien who has been convicted beyond a reasonable doubt of an underlying criminal offense that has rendered him removable from the United States. As the Supreme Court explained in *Demore*, "[i]n the exercise of its broad powers over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *See also Rodriguez Diaz* v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("The recognized liberty interests of U.S. citizens and aliens are not coextensive").

And finally, as the Ninth Circuit has explained, in evaluating a detainee's interest under this first factor, a court "simply cannot count his months of detention and leave it at that." *Rodriguez Diaz*, 53 F.4th at 1208. A court should also "consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to challenge his removal order." *Id.* In the instant matter, Petitioner has filed a motion to terminate his removal proceedings, which if allowed, could lead to his release pending a decision by the Government to appeal such order. Petitioner also can challenge the applicability

of Section 1226(c) to his case by asking the IJ to conduct a *Matter of Joseph* hearing to determine whether his conviction renders him subject to mandatory detention.  22 I. & N. Dec. 799 (BIA 1999). His final hearing on his application for relief for removal is also scheduled in a matter of weeks.   And, as explained earlier, Petitioner's period of detention has been significantly lengthened by his seeking of continuances to obtain counsel, not by delay on behalf of the Government.  Precedent establishes that aliens, especially criminal aliens, are due less process when facing removal hearings than an ordinary citizen would have.  As such, while Petitioner's interest is weighty, this first factor does not favor him under the *Mathews* analysis at this time.

Concerning the second factor, the risk of erroneous deprivation and probative value, if any, of additional or substitute procedural safeguards, Petitioner fails to account for his right to seek a *Matter of Joseph* hearing to challenge Section 1226(c)'s applicability to him and for Congress's rationale for enacting 8 U.S.C. § 1226(c) into law, in which it expressly declined to require bond hearings for such criminal aliens, nor account for the fact that the Supreme Court has subsequently reviewed Congress's enactment of 8 U.S.C. § 1226(c) and upheld as reasonable the rationale for the lack of such bond hearings.  *See Demore*, 538 U.S. at 518-28; *Reno v. Flores*, 507 U.S. 292, 315 (1992) ("It may well be that other policies would be even better, but 'we are [not] a legislature charged with formulating public policy'") (quotation omitted).

As the Supreme Court noted in *Demore*, 538 U.S. at 518, "Congress adopted [8 U.S.C. § 1226(c)] against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by [noncitizens]."  Critically, in passing 8 U.S.C. § 1226(c), Congress considered the probative value of additional procedural safeguards, like bond hearings, for this subset of noncitizens, but ultimately decided against allowing bond hearings as "evidence suggest[ed] that permitting discretionary release of aliens pending their removal hearings would lead to large

numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." *Id*. at 528; *id*. at 519 (noting that Congress was presented with evidence that "[d]etention is the key to effective deportation"). Thereafter, in subsequently assessing Congress's rationale for the lack of such bond hearings, the Supreme Court held, upon evaluation, that "[t]he evidence Congress had before it certainly supports the approach it selected[.]" *Id*. at 528; *id*. at 513 ("We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings."). Thus, while Petitioner takes issue with the procedures afforded by Congress, and found to be reasonable by the Supreme Court, the Court should be more persuaded by Congress and the Supreme Court in its analysis. *See id*. at 528; *Flores*, 507 U.S. at 315.

The third factor, the Government's interest in maintaining Petitioner in detention pending his removal proceedings, weighs heavily in the Government's favor, despite Petitioner's claim to the contrary. As a general matter, the Supreme Court has long held that when addressing the Government's interest in the immigration context, and in immigration enforcement in particular, the Government's interest is at its zenith. *See Flores*, 507 U.S. at 305 ("Over no conceivable subject is the legislative power of Congress more complete."). The Government has an obvious interest in "protecting the public from dangerous criminal aliens." *Demore,* 538 U.S. at 515. Through detention, the Government additionally seeks to "increase[e] the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. *See also Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable ... permits and prolongs a continuing violation of United States law.") (quotations and alteration omitted); *Miranda v. Garland*, 34 F.4th

338, 364 (4th Cir. 2022) ("Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest").

The First Circuit has acknowledged the Government's important interests in immigration detention and execution of removal orders. *See Hernandez-Lara*, 10 F.4th at 32 ("The prompt execution of removal orders is a legitimate governmental interest … which detention may facilitate."). As the Ninth Circuit recently explained, this interest "is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1208; *Miranda*, 34 F.4th at 364 ("Importantly, during the deportation process, that government interest includes detention.").

Here, Petitioner has engaged in criminal activity since 2015, one year after he entered the United States. *See* Chan Decl., ¶¶ 23-27. Petitioner's criminal history is lengthy, serious, and violent, and he represents exactly the individual Congress designed Section 1226(c) mandatory detention to apply to. Petitioner began to engage in criminal activity in 2015 and therefore was detained by ICE while he pursued removal proceedings in 2017. Petitioner was granted relief from removal and released from detention, becoming a Lawful Permanent Resident. Undeterred by receipt of an IJ's grant of discretionary relief from removal, Petitioner continued, and escalated, his criminal activity within months of release from detention in 2017. Since that time, he was convicted of firearms offenses and of breaking and entering to commit felony. As such, the Government undoubtedly has an interest in maintaining Petitioner in detention without access to a bond hearing to ensure he does not continue engaging in criminal activity as he has done over the past ten years. The Supreme Court has upheld the categorical way in which Section 1226(c) addresses this problem, explaining that Congress can legislate based on "reasonable presumptions and generic rules," *Demore*, 538 U.S. at. at 526 (citation omitted), and that vesting IJs with case-

28

by-case discretion might not adequately prevent "large numbers of deportable criminal [noncitizens] skipping their hearings," *id.* at 528.

And while Petitioner claims that his liberty interest outweighs the Government's interest in denying him a bond hearing, as explained by the Ninth Circuit, the Government's interests "only increase with the passage of time.  The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal." *Rodriguez Diaz*, 53 F.4th at 1209.  This factor, therefore, tips in favor of the Government.  At bottom, even if the *Mathews* test were to be administered in Petitioner's case, the factors do not weight the balance in his favor.  Thus, regardless of the framework applied, he is unable to meet his burden of demonstrating a due process violation to warrant the relief he seeks and thus the Court should deny the Petition.

### 5.   If habeas relief is contemplated, release is inappropriate, and Petitioner should bear the burden of proof at any bond hearing.

If this Court finds that Petitioner merits habeas relief, this Court nonetheless should deny Petitioner's request that he be ordered released immediately.  The remedy for unreasonably prolonged detention is for the Court to issue an order directing the Immigration Court to conduct a bond hearing, rather than an order that the detainee be released.  *See Reid*, 390 F. Supp. 3d at 220 ("Once an alien's mandatory detention has become unreasonably prolonged in violation of due process, he is entitled to a bond hearing before an immigration judge, not immediate release."); *Alphonse II*, 635 F.Supp.3d at 39 ("To be clear, the Court is not determining that he must be released from custody; rather, it is concluding that he is entitled to a bond hearing …").

Assuming *arguendo* that Petitioner merits habeas relief in the form of a bond hearing, the Court should order that the Immigration Court conduct such hearing, and not accept the Petitioner's invitation to hold such hearing itself.  Petitioner acknowledges that this Court has

consistently directed that the Immigration Court is best suited to conduct such bond hearings. Doc. No. 1-3 at 20. While Petitioner claims that such hearing might not be accomplished expeditiously before an IJ, a review of prior orders granting habeas relief shows that this Court typically orders the Immigration Court conduct such hearing within 7-14 calendar days and there is no reason to believe such an order, if entered, could not be complied with in this case. *See Perez v. Souza*, No. CV 20-10414-PBS, 2020 WL 1514606, at *5 (D. Mass. Mar. 30, 2020) (Ordering IJ to conduct bond hearing with ten calendar days); *De La Cruz Hernandez v. Moniz*, No. CV 21-10625-PBS, 2021 WL 3174915, at *4 (D. Mass. May 24, 2021) (Ordering IJ to conduct bond hearing within eight calendar days).

If habeas relief is ordered, this Court should order that Petitioner, and not the Government, bear the burden of establishing that he would not pose a risk of flight or danger to the community. Respondent's burden of proof argument is supported by 8 U.S.C. § 1226(c)'s statutory text, Supreme Court caselaw, and a recent decision within this District.

Starting with the text, in the sole instance where release is permitted pursuant to 8 U.S.C. § 1226(c), Congress mandated that the burden of proof be on the on the criminal alien, not the government to justify release. *See* 8 U.S.C. § 1226(c)(2). The Supreme Court affirmed that the statute is clear on this point in *Jennings*, 583 U.S. at 846-47.

Supreme Court caselaw also supports the proposition that a criminal alien held in civil immigration detention bear the burden of proof to demonstrate that he warrants release from detention. Critically, the Supreme Court has *always and repeatedly* affirmed the constitutionality of civil immigration detention pending removal proceedings and the Supreme Court has *never* ordered the Government to bear the burden of proof by clear and convincing evidence to justify detaining an alien in civil immigration detention during ongoing removal proceedings. (Emphasis

added); s*ee, e.g.*, *Demore*, 538 U.S. at 522, 531; *Rodriguez Diaz*, 53 F.4th at 1211 ("We are aware of no Supreme Court case placing the burden on the government to justify the continued detention of an alien, much less through an elevated 'clear and convincing' showing.").  Similarly, Justice Kennedy's concurrence in *Demore* explained that if the government was no longer able to categorically detain a noncitizen, "then the permissibility of continued detention pending deportation proceedings" would turn "solely upon the alien's ability to satisfy the ordinary bond procedures—namely, whether if released the alien would pose a risk of flight or a danger to the community." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).  In fact, even when considering an alien subject to potentially indefinite detention after the conclusion of removal proceedings, the Supreme Court held that *the alien, not the Government*, must bear the initial burden of proof to justify that release is warranted.  *See Zadvydas*, 533 U.S. at 701 (Emphasis added).

Chief Judge Saylor, in ordering a bond hearing be held for a criminal alien, recently held that such alien must bear the burden of proof.  *Alphonse II*, 635 F.Supp.3d at 40.  In that case, the petitioner, as done here, argued that Government should bear the burden of proof citing to the First Circuit's decision concerning a Section 1226(a) detainee in *Hernandez-Lara*.  *Id.*  The district court in *Alphonse II*, however, disagreed, based upon the distinctions between the underlying detention statutes – Section 1226(a) and Section 1226(c).  *Id.*  In *Hernandez-Lara,* the First Circuit expressly distinguished Section 1226*(a)* from the detention statute at issue in this case: Section 1226*(c)*.  "Unlike section 1226(c)," the First Circuit reasoned, "section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all."  *Id.* at 36.  By contrast, Section 1226(c) "specifically applies to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes."  *Id.* at 35.

That distinction matters because Congress has validly concluded that criminal noncitizens pose a greater risk of flight and danger during removal proceedings. As the Supreme Court has explained, Congress was "justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Demore*, 538 U.S. at 513. Therefore, because the serious criminal histories of these criminal aliens permitted Congress to constitutionally deny them individualized bond hearings in the first instance, it necessarily follows that their serious criminal histories would warrant different (and less stringent) standards at bond hearings for Section 1226(c) criminal aliens than those that apply at bond hearings for Section 1226(a) aliens.

In *Alphonse II,* Chief Judge Saylor agreed with the above argument, concluding that "placing the burden of proof on the petitioner in a § 1226(c) bond hearing aligns with the First Circuit's reasoning and the Supreme Court's findings of congressional intent." *Alphonse II*, 635 F.Supp.3d at 40. Other courts have held similarly recently. *See de Zarate v. Choate,* No. 23-CV-00571-PAB, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (same); *Martinez v. Ceja*, No. 24-CV-03056-PAB, 2024 WL 5168143, at *7 (D. Colo. Dec. 19, 2024) (same).

As such, if this Court determines that Petitioner has demonstrated that his continued detention without a bond hearing constitutes a due process violation, the remedy must be an order for a bond hearing before an IJ with the burden of proof on him to demonstrate by a preponderance of the evidence that he warrants release.

## **CONCLUSION**

For the above reasons, Petitioner's assertion of unlawful detention in violation of the Constitution fails. As such, this Court should deny his plea for release or his request for a bond hearing.

LEAH B. FOLEY
United States Attorney

Dated: March 5, 2025          By:     */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  March 5, 2025          By:     */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney