# B

## Unofficial Transcript of April 28, 2025, Bond Hearing
## Renso Antonio Lino-Ramos

00:01 **COURT**: We're on the record. This is a custody redetermination hearing for Renso Antonio Lino-Ramos, 206-489-451. Counsel for the respondent, please enter your appearance.

00:11 **ATTORNEY NADER**: Eliana Nader for the respondent, Your Honor, and I am partnering with the team at the Yale Law School Clinic who will be entering their appearance in our joint representation.

00:21 **COURT**: Okay.

00:22 **MR. DE LA ROSA**: Good morning, Your Honor. My name is Bill de la Rosa. I'm a law student representing Mr. Lino-Ramos in this bond hearing under the supervision of Attorney Marisol Orihuela.

00:31 **COURT**: Okay.

00:32 **ATTORNEY ORIHUELA**: Good morning, Your Honor. Marisol Orihuela for the respondent as non-primary attorney. Um, we have entered our appearances for custody proceedings.

00:43 **COURT**: All right, so are we ready for a first bond hearing today?

00:50 **MR. DE LA ROSA**: Yes.

00:51 **COURT**: Okay, do you want to waive your client's presence for our discussions today?

00:56 **MR. DE LA ROSA**: Your Honor, if it's feasible, we would like to have Mr. Lino-Ramos present. If not, we're also ready to proceed.

01:01 **IJ CHO**: Okay, let's proceed. There's, um, 35 minutes left and there's a lot more cases that I need to, um, uh, still reach. So, um, let's mark the evidence. Well, no, DHS, do I have jurisdiction?

01:16 **DHS**: So, Your Honor, this is a case in which you had dismissed the underlying NTA. The department is currently—it's pending appeal at the BIA. The NOA has been filed, and it was regarding a conviction. So, it's DHS's position still that conviction, obviously based

1

on the appeal, would, um, merit the sustaining of the NTA and, I believe that it's a firearm conviction, so mandatory detention. And then in the alternative, the respondent's conviction for carrying a loaded firearm would be evidence of danger.

01:57 **COURT**: Okay, so Massachusetts firearm statute being overbroad prior to this whole, the update in the criminal law, the omnibus update. Okay, that—

02:11 **DHS**: The Crime Bill. Yes. It has to do with the—

02:12 **COURT**: That whole mess. Okay, okay.

02:13 **DHS**: Crime Bill changes—

02:15 **COURT**: Oh, okay.

02:16 **DHS**: I'm not on the appeal, so I'm not privy to the exact details.

02:20 **COURT**: Are you doing the appeal? Who's doing the appeal?

02:23 **DHS**: I'm not doing the appeal. Another ACC in my office filed the appeal—

02:26 **COURT**: Ah, okay. That's what you just said. All right, so I made a ruling, DHS objects, DHS disagrees, and appeal is pending. And, uh, so you're arguing that it's mandatory, but are you arguing danger in the alternative?

02:40 **DHS**: Yes, Your Honor, that's what I just said.

02:41 **COURT**: All right—

02:42 **DHS**: Based on the convictions.

02:44 **COURT**: Yeah, okay, thank you. It just takes me a little bit to catch up with what you said, so I'm just now— ah, okay. Uh, so what was he convicted of exactly?

02:56 **DHS**: It's a conviction for breaking and entering in the night.

03:00 **COURT**: So breaking and entering, fire—

03:03 **DHS**: There's some other, and as well as—I believe there is a firearm conviction. It's just, it wasn't a question of whether he was convicted of firearm offense, it was whether or not it qualified for mandatory.

2

03:17 **COURT**: So B&E at nighttime, guilty plea, and it's one year House of Correction concurrent credit… Attempt to commit a crime, guilty plea, 1 year House of Correction… And there's the complaint, MIT for 1 year credit, the plea sheet… All right, thank you. Let's mark the evidence. One is the, um, bond motion, 12 pages. Two is the, the respondent's evidence, 50 pages with arguments. And three is the government's evidence. 1, 2, and 3. Do the parties have 1, 2, 3? Have I accounted for everything that you filed? Any objections? 1, 2, and 3. Miss Lenny?

04:06 **DHS**: No objections.

04:07 **COURT**: Student attorney?

04:10 **MR. DE LA ROSA**: No objections, Your Honor.

04:11: **COURT**: All right, 1, 2, 3 are admitted. Okay, counsel for the respondent, please go ahead.

04:17 **MR. DE LA ROSA**: Your Honor, it's our position that Mr. Lino-Ramos is neither a flight risk or a danger to the community. As the First Circuit made clear in *Hernandez-Lara*, the government bears the burden of proving—

04:27 **COURT**: Okay, I don't need the, um, law. Tell—so, focus on the factual basis for whether he's a danger or not, please.

04:36 **MR. DE LA ROSA**: Would you like me to only focus on the danger, Your Honor, or also talk about the flight risk?

04:39 **COURT**: Uh, I can't hear you very well. One more time.

04:42 **MR. DE LA ROSA**: Would you like me to only focus on the danger factor or on the flight risk?

04:45 **COURT**: Yes, danger. Just danger.

04:49 **MR. DE LA ROSA**: Sounds good, Your Honor. Uh, Your Honor, Mr. Lino-Ramos is not a danger to the community. At the time of his criminal convictions, he was living with undiagnosed depression and using alcohol to self-medicate. He was coping poorly with trauma and mental health struggles that began in childhood. His conviction for breaking

3

and entering stems from an incident in which Mr. Lino-Ramos blacked out from excessive alcohol consumption and mistakenly entered another vehicle that was not his own. His firearms convictions stemmed from an incident where he was hanging out with a friend and agreed to hold the friend's gun. While he takes full responsibility for his actions and regrets them, those decisions were made during a time when he lacked mental health treatment, but that does not render him dangerous today. Today, Your Honor, Mr. Lino-Ramos's circumstances have dramatically changed. Mr. Lino-Ramos was diagnosed with depression in July 2024, and is now engaged in mental health treatment, including medication and counseling. He has also maintained over 2 years of sobriety. More importantly, Your Honor, he now has the ongoing resources and support in his community in Chelsea, Massachusetts, to manage the underlying issues that contributed to his past behavior. He is committed to continuing therapy and medication, enrolling in AA programming, and doing the hard work to become the father and community member he wants to be. Should the court have any remaining concerns about risk, Mr. Lino-Ramos has no objection to electronic monitoring. We recognize that such conditions can be burdensome. However, he is fully prepared to comply with any terms—with any terms imposed by the court. His only priority, Your Honor, is to return home to his daughters and continue rebuilding his life. For these reasons, we respectfully ask that the court grant Mr. Lino Ramos's release on a reasonable bond so he may reunite with his family and continue litigating his case from outside of detention.

06:44 **COURT**: Okay. Um, so this case, uh, let's see. So the question is whether the respondent will continue to be in detention while the appeal is pending. So if the respondent… The appeal comes down in the respondent's favor, that's it? Okay, good. The court is going to deny bond, uh, in this case. I understand, you know, I appreciate the case posture regarding, you know, the court granting the motion to dismiss, and that goes to flight risk, but in terms of mens rea, you know, there's an explanation that you're giving regarding what his, you know, conditions were that may have resulted in that criminal offense, but, you know, he entered into a plea, and presumably that's evidence beyond a reasonable doubt of his guilt, mens rea and actus reus, and the court finds that is clear and convincing evidence of danger. Counsel for the respondent, would you like to reserve appeal for your client?

4

07:50 **MR. DE LA ROSA**: Yes, Your Honor.

07:51 **COURT**: Okay, appeal is due 30 days from today. That is May 28, May 28, 2025. That means the appeal has to be at the Board of Immigration Appeals on that date, not the day after. They're extremely strict about the appeals date. Um, will you communicate everything with your client, uh, today?

08:12 **MR. DE LA ROSA**: Yes, Your Honor.

08:13 **COURT**: I'm sorry, you can talk to him whenever you want to. But you, will you talk to him about what we discussed today? That's what I meant.

08:22 **MR. DE LA ROSA**: Yes, your Honor.

08:22 **COURT**: Okay, great. Thank you very much. Then we are adjourned. Code 8B. Thank you. Thank you.

## DECLARATION OF MAURICIO GONZALEZ SANCHEZ

I, Mauricio Gonzalez Sanchez, being duly sworn, do hereby declare and state as follows:

1.  I am a law student intern in the Worker and Immigrant Rights Advocacy Clinic of the Jerome N. Frank Legal Services Organization (LSO) at Yale Law School.

2.  On May 29, 2026, I accessed an audio recording LSO requested and received from the Chelmsford Immigration Court. The audio file was contained in a folder titled "206-489-451_2025-04-28". I accessed the audio recording using RCPlayer, the Digital Audio Recording (DAR) software used by the Executive Office for Immigration Review. The audio recording captured the April 28, 2025, bond hearing for Renso Antonio Lino-Ramos, held before Immigration Judge Yul-mi Cho.

3.  Through repeated playback of the audio recording, I created an unofficial transcript of the April 28, 2025, bond hearing. The audio recording was 8 minutes and 27 seconds long. The transcript I created of the audio recording is 5 pages long.

4.  I have previously created such unofficial transcripts, including for submission in federal district court.

5.  To the best of my ability and knowledge, the transcript I created is a true, complete, and accurate transcription of the audio recording of the April 28, 2025, bond hearing.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct.

Executed on: May 29, 2026

New Haven, Connecticut

Mauricio Gonzalez Sanchez