**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **RENSO ANTONIO LINO-RAMOS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-10470-BEM** |
| | ) | |
| **ANTONE MONIZ,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**MURPHY, J.**

Petitioner Renso Antonio Lino-Ramos ("Petitioner") brings this action to challenge his more than twenty-four-month detention at Plymouth County Correctional Facility ("Plymouth"). Petitioner argues that the lengthy duration and harsh conditions of his confinement violate the Fifth Amendment Due Process Clause. For the reasons set forth below, the Court concludes that Petitioner's prolonged detention under 8 U.S.C. § 1226(c) without a bond hearing violates his procedural due process rights. The Court reserves ruling on Petitioner's substantive due process arguments.

I.    **Background**

A.    **Personal History**

Petitioner was born in Honduras. Dkt. 60-2 ¶ 1; Dkt. 60-3 at 2. In 2014, at the age of sixteen, Petitioner came to the United States. Dkt. 60-2 ¶ 12. Two months after arriving, Petitioner applied for, and was granted, Special Immigrant Juvenile Status. Dkt. 60-3 at 3. On July 19, 2017, Petitioner became a lawful permanent resident. *Id.*

In 2018, at the age of twenty, Petitioner was charged with Carrying a Firearm Without a License, in violation of Mass. Gen. Laws ch. 269, § 10(a); Carrying a Loaded Firearm Without a License, in violation of Mass. Gen. Laws ch. 269, § 10(n); and Defacing a Firearm Serial Number, in violation of Mass. Gen. Laws ch. 269, § 11C.  Dkt. 60-3 at 5.  Later, in 2022, Petitioner was charged with Breaking and Entering at Night with Intent to Commit a Felony, in violation of Mass. Gen. Laws ch. 266, § 16, and Attempt to Commit a Crime, in violation of Mass. Gen. Laws ch. 274, § 6.  *Id.* at 4.  On October 26, 2023, Petitioner pled guilty to all five counts and was sentenced to two years and one day.  Dkt. 60-2 ¶ 15.  Petitioner spent twenty-one and a half months at the Middleton Jail and House of Correction in Essex County, Massachusetts, after which he was released on parole.  Dkt. 60-4 ¶ 3; Dkt. 60-2 ¶ 2.  On May 29, 2024, upon being released on parole, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents and taken to Plymouth, where he has been detained since that day.  Dkt. 60-5 at 2, 5; Dkt. 60-4 ¶ 3.[1]

**B.    Removal Proceedings**

The same day that he was arrested and taken to Plymouth, Petitioner was issued a Notice to Appear and placed in removal proceedings on the ground that his conviction for breaking and entering under Mass. Gen. Laws ch. 266, § 16 constituted an aggravated felony and a "crime involving moral turpitude" under the Immigration and Nationality Act ("INA").  Dkt. 60-5 (citing 8 U.S.C. §§ 1227(a)(2)(A)(i), (iii)).  On December 10, 2024, pro bono counsel for Petitioner filed a motion in immigration court to terminate removal proceedings and for the appointment of counsel, arguing that Petitioner's breaking and entering conviction was neither an aggravated felony nor a crime involving moral turpitude.  *See generally* Dkt. 60-10.  However, four days prior,

---

[1] The Court does not rule on the merits of Petitioner's substantive due process claims in this opinion. Accordingly, the Court reserves discussion of the conditions of Petitioner's confinement at Plymouth for when it addresses Petitioner's substantive due process claims, if necessary, in a subsequent opinion.  *See infra* Section III.2.

on December 6, 2024—unbeknownst to Petitioner or his counsel—ICE had amended Petitioner's Notice to Appear to replace the original charges with a new INA charge based on his firearms conviction. Dkt. 60-11 at 2 (citing 8 U.S.C. § 1227(a)(2)(C)). As a result, the Immigration Judge ("IJ") denied Petitioner's motion to terminate as moot. Dkt. 60 ¶ 49.

On February 7, 2025, Petitioner applied for cancellation of removal with the assistance of immigration counsel. Dkt. 60-12. Then, on February 18, 2025, Petitioner filed a second motion to terminate removal proceedings, arguing that the firearms conviction was categorically overbroad and not a deportable offense because the state statute at the time of his conviction covered stun guns, while the federal generic "firearm offense" did not. Dkt. 60-13. On March 20, 2025, the IJ granted Petitioner's second motion to terminate. Dkt. 60-14. The Department of Homeland Security ("DHS") appealed, and the Board of Immigration Appeals ("BIA") vacated the IJ's decision on September 30, 2025. Dkt. 60-15 at 8. Petitioner filed a third motion to terminate on October 16, 2025, arguing that the state statute under which he was charged was "categorically overbroad under the INA because . . . Massachusetts's definition of a 'firearm' did not exclude antique firearms" and "[t]he availability of an affirmative defense for antique firearms cannot cure the state statute's overbreadth because the burden of raising an affirmative defense lies with the defendant." Dkt. 60-16 at 3. The IJ denied the motion on October 30, 2025, Dkt. 60-17, and subsequently denied Petitioner's motion to reconsider, Dkt. 60-18; Dkt. 60 ¶ 57.

On January 7, 2026, the IJ held a hearing on Petitioner's application for cancellation of removal but did not complete the hearing and continued it until March 27, 2026. Dkt. 60-20 ¶¶ 1–2. The evening before the March 27, 2026 hearing, DHS filed a motion to pretermit, arguing that Petitioner is statutorily ineligible for removal and requesting to reinstate the removability

charges DHS had withdrawn previously, on December 6, 2024.[2]  *Id.* ¶¶ 3–5.  During the March

27, 2026 hearing, the IJ gave DHS two options.  The IJ stated that she would exercise her discretion

to deny Petitioner's cancellation of removal if DHS withdrew its motion to pretermit and waived

the arguments raised therein, or, if DHS chose to proceed on its motion to pretermit, she would

continue the hearing to give Petitioner time to respond to DHS's arguments.  *Id.* ¶ 6; Dkt. 60-19 at

4–5.  DHS declined to withdraw its motion and the IJ continued the hearing to May 22, 2026.  Dkt.

60-20 ¶ 7; *see also* Dkt. 60-19 at 5.  The May 22, 2026 hearing was ultimately held on June 4,

2026, *see* Dkt. 79 at 2; Dkt. 80 at 6 n.3, on which date the IJ found Petitioner statutorily eligible

for cancellation of removal, but denied his application as a matter of discretion, Dkt. 83 at 1.  The

IJ ordered Petitioner removed to Honduras.  *Id.*

### C.     <u>Bond Hearing</u>

While the above proceedings were ongoing, Petitioner also sought release on bond.  On

February 26, 2025, Petitioner filed a petition for a writ of habeas corpus in this Court, arguing that

his nine-month detention without a bond hearing violated in his procedural process rights.  Dkt. 1

¶¶ 38–45.  This Court denied the petition on the ground that his detention without a bond hearing

was not yet presumptively unreasonable.  Dkt. 27 at 2.

On March 26, 2025, Petitioner filed a filed a bond redetermination request with the

Immigration Court under *Matter of Joseph*, 22 I. & N. Dec. 799 (B.I.A. 1999), arguing that because

the IJ had granted Petitioner's second motion to terminate, he was no longer detained under section

8 U.S.C. 1226(c) ("section 1226(c)") and was now eligible for a bond hearing under 8 U.S.C.

---

[2] DHS may file a motion to pretermit an application for relief—including asylum, withholding of removal, or protection under the Convention Against Torture (CAT)—on the ground that it is defective as a matter of law.  *See, e.g.*, *Nadal-Ginard v. Holder*, 558 F.3d 61, 63 (1st Cir. 2009) (upholding the IJ's decision to pretermit noncitizen's application for a waiver of inadmissibility).  If the IJ grants a motion to pretermit, the underlying application is denied with a full hearing.

§ 1226(a) ("section 1226(a)").  Dkt. 60-21 at 3.  The IJ held a bond hearing on April 28, 2025, at which she denied bond based on a finding that Petitioner was a danger to the community.  Dkt. 60-22 at 5.  Petitioner appealed the denial of bond to the BIA on June 24, 2025.  *See generally* Dkt. 60-23.  On September 25, 2025, the BIA affirmed the denial of bond.  Dkt. 60-24 at 4–6.

Petitioner filed an amended petition for a writ of habeas corpus on April 8, 2026.  *See* Dkts. 60, 61.  This Court held a hearing on the amended petition on May 12, 2026, and took the matter under advisement.

## II.    Statutory Framework

Section 1226 governs the detention of noncitizens during removal proceedings.[3]  Most noncitizens may be released on bond or parole while their proceedings are pending, pursuant to section 1226(a), but section 1226(c) "carves out a statutory category of aliens who may *not* be released."  *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis in original).  Section 1226(c) mandates that "the Attorney General shall take into custody any alien who" has committed a specific type of offense or is inadmissible on certain other grounds.[4]  8 U.S.C. § 1226(c)(1).  As relevant here, these offenses include "crime[s] of moral turpitude," 8 U.S.C. § 1227(a)(2)(A)(i), and aggravated felonies, 8 U.S.C. § 1227(a)(2)(A)(iii).  Such noncitizens may be released if "necessary" for witness protection, and if "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any

---

[3] Consistent with recent U.S. Supreme Court practice, the Court uses "noncitizen" in lieu of the statutory term "alien."  *See, e.g.*, *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'"); *see also generally Patel v. Garland*, 596 U.S. 328 (2022); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021).

[4] "Although the INA refers to the Attorney General, the Homeland Security Act of 2002 . . . transferred the immigration powers previously exercised by the Attorney General to the Secretary of Homeland Security and divisions of DHS."  *Ozturk v. Trump*, 819 F. Supp. 3d 45, 50 n.2 (D. Mass. 2025) (internal quotation marks omitted), *appeal docketed sub nom.*, *Ozturk v. Hyde*, No. 26-1135 (1st Cir. Feb. 7, 2026).

scheduled proceeding."  8 U.S.C. § 1226(c)(4).  The statute does not otherwise provide for the release of noncitizens detained under section 1226(c).

## III.    Discussion

The Supreme Court upheld the constitutionality of mandatory detention under section 1226(c) in *Demore v. Kim*, 538 U.S. 510 (2003).  There, the Supreme Court rejected the habeas petitioner's argument that "his detention under § 1226(c) violated due process because the [Immigration and Naturalization Service] had made no determination that he posed either a danger to society or a flight risk," and emphasized that section 1226(c) "governs detention of deportable criminal aliens *pending their removal proceedings*" and that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  *Id.* at 514, 527–28 (emphasis in original).  However, central to the holding was the purportedly finite nature of section 1226(c) detention:

> We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained *for the brief period necessary for their removal proceedings*.

*Id.* at 513 (emphasis added); *see also id.* at 529 (explaining that detention under section 1226(c) is of limited duration and has "a definite termination point").[5]  Put simply, the *finite* period of detention during removal proceedings was necessary to effectuate the congressional purpose regarding this category of noncitizens and thus constitutionally permissible, notwithstanding the

---

[5] In *Demore*, the Supreme Court relied upon case statistics indicating that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter."  538 U.S. at 529.

"well established" principle "that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

In the years since *Demore*, Courts have grappled with reconciling the Supreme Court's blessing of a "brief period" of mandatory detention under section 1226(c) with the demands of due process.[6] Confronted with Petitioner's challenge, this Court now takes up that mantle and begins with the procedural due process claim.

### 1.   Procedural Due Process

Petitioner argues that his previous bond hearing was procedurally inadequate and that his nearly twenty-five months of detention without an adequate bond hearing violates his Fifth Amendment procedural due process rights. Dkt. 61 at 19–25, 20 n.12. The First Circuit, like several of its sister circuits,[7] recognizes that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention under section 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) ("*Reid IV*"); *see also Demore*, 538 U.S. at 532 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination

---

[6] After *Demore*, the Supreme Court again confronted mandatory detention in *Jennings v. Rodriguez*, 583 U.S. 281, 304–06 (2018), in which the Court rejected the proposition that section 1226(c) requires bond hearings after six months of detention and concluded that the statute precludes release on bond before removal proceedings are completed (except in the case of witness protection). "Critically, however, *Demore* and *Jennings* leave open the question whether prolonged detention under section 1226(c) without a bond hearing will *at some point* violate an individual detainee's due process rights." *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) (emphasis in original), *rehearing en banc denied sub nom.*, *Black v. Almodovar*, 156 F.4th 171 (2d Cir. 2025), *cert. granted sub nom.*, *Genalo v. Black*, --- S. Ct. ----, 2026 WL 1718025 (June 15, 2026). Many courts post-*Jennings* have applied some sort of 'reasonableness' limitation on mandatory detention. *See id.* at 146 (describing the "variety of approaches" taken by different courts).

[7] *See, e.g.*, *Black*, 103 F.4th at 145 ("The Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary."), *rehearing en banc denied sub nom.*, *Black v. Almodovar*, 156 F.4th 171 (2d Cir. 2025); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020). *But see Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024) ("Due process imposes no time limit on detention [pursuant to section 1226(c)] pending deportation.").

as to his risk of flight and dangerousness *if the continued detention became unreasonable* or unjustified." (emphasis added)).    The first question, then, is what standard to apply when evaluating whether Petitioner's mandatory detention has become unreasonably prolonged and thus run afoul of procedural due process.

### a.    Legal Standard

There is no binding test in the First Circuit by which a court evaluates whether detention under section 1226(c) violates procedural due process.[8]    However, in evaluating reasonableness, the First Circuit previously suggested that:

> [A] court might examine, *inter alia*, the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

---

[8] Respondent claims that Petitioner's procedural due process argument is, in fact, a substantive due process argument, because he seeks a *substantive* determination regarding flight risk or dangerousness that section 1226(c) does not require.    Dkt. 80 at 3–5 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) (holding that procedural "due process does not require the opportunity to prove a fact that is not material to the . . . statutory scheme")).    Respondent contends that this counsels against adopting the framework from *Mathews v. Eldridge*, 424 U.S. 319 (1976), discussed *infra*, because the *Mathews* test applies to *procedural* due process claims, Dkt. 80 at 5. The Court need not dwell on this argument, which numerous federal courts have already rejected in the immigration habeas context.    *See, e.g.*, *Chan v. Bondi*, 2026 WL 388605, at *2 (W.D. Pa. Feb. 12, 2026) (rejecting a similar argument in the context of section 1226(c) detention); *Abubakari v. Warden, Folkston ICE Processing Ctr.*, 2026 WL 1694673, at *16 (S.D. Ga. June 11, 2026) (rejecting a similar argument in the context of 8 U.S.C. § 1225(b) ("section 1225(b)") detention); *Gomes v. Garite*, 2026 WL 1179617, at *5–6 (W.D. Tex. Apr. 21, 2026) (same); *Alvarado v. Vergara*, 2026 WL 594366, at *3 (W.D. Tex. Mar. 2, 2026) (same); *cf. Rodriguez v. Frink*, 2026 WL 709487, at *2 (S.D. Tex. Mar. 13, 2026) (not definitively addressing this argument but expressing "doubts as to whether *Connecticut Dep't of Pub. Safety v. Doe* is applicable"); *see also, e.g.*, *Ortega Hernandez v. Lyons*, 2026 WL 1616790, at *4–5 (W.D. La. May 19, 2026) (finding *Connecticut* instructive, but continuing to characterize the petitioner's claims as based in procedural due process), *report and recommendation adopted sub nom., Ortega Hernandez v. Lyons*, 2026 WL 1615507 (W.D. La. June 4, 2026).

*Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016) ("*Reid II*"), *opinion withdrawn on reconsideration*, 2018 WL 4000993 (1st Cir. May 11, 2018).[9]  Notably, however, this opinion addressed a *statutory* rather than *constitutional* challenge to detention.  *See Reid IV*, 17 F.4th at 5; *see also Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256 n.19 (D. Mass. 2025) (noting that the *Reid* factors "were put forth for purposes of an implicit reasonableness requirement that the court (at that time) found in the statute, rather than as a means of assessing a constitutional claim").  What is more, the First Circuit later withdrew *Reid II* in light of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), which rejected the contention that section 1226(c) requires a bond hearing after six months of detention.  *See Reid v. Donelan*, 2018 WL 4000993 (1st Cir. May 11, 2018).[10]

Nevertheless, other sessions of this Court have found the "*Reid* factors" instructive and applied them to procedural due process challenges to section 1226(c) detention.  *See, e.g.*, *Martinez Lopez v. Moniz*, 2021 WL 6066440, at *5–7 (D. Mass. Dec. 22, 2021); *Alphonse v. Moniz*, 635 F. Supp. 3d 28, 35–39 (D. Mass. 2022) ("*Alphonse II*"); *see also Rocha v. Barr*, 422 F. Supp. 3d 472, 480 (D.N.H. 2019) ("[C]ourts, including this one, have applied the *Reid* factors or a similar listing to evaluate whether detention under § 1226(c) has been unconstitutionally prolonged.").  And in its memorandum and order on Petitioner's prior habeas petition, this Court "agree[d] that 'the *Reid* factors provide a reasonable framework to assess whether continued detention under 1226(c) is

---

[9] In *Reid II*, the First Circuit reversed the bright-line rule adopted by the district court requiring a bond hearing after six months of detention.  *See* 819 F.3d at 498–99; *see also Reid v. Donelan*, 991 F. Supp. 2d 275, 279–81 (D. Mass. 2014) ("*Reid I*") ("Under the six-month approach, the analysis in this case is simple: Plaintiff has been held in custody for fourteen months, and thus his continued detention without a bond hearing is presumptively unreasonable.").  However, the First Circuit affirmed the alternative holding of the district court, *Reid II*, 819 F.3d at 501, which turned on an individualized assessment of factors, including "the length of detention; the period of detention compared to the criminal sentence; the foreseeability of removal; the prompt action of immigration authorities; and whether the petitioner engaged in any dilatory tactics," *Reid I*, 991 F. Supp. 2d at 281.

[10] For a more fulsome account of the *Reid* trajectory, *see Martinez Lopez v. Moniz*, 2021 WL 6066440, at *3–4 (D. Mass. Dec. 22, 2021).

reasonable.'"  Dkt. 27 at 2 (quoting *Alphonse II*, 635 F. Supp. at 35).[11]  Indeed, "[t]he majority of district courts have applied a multi-factor test to determine whether a petitioner's prolonged detention under Section 1226(c) violates due process." *Zagal-Alcaraz v. ICE Field Off.*, 2020 WL 1862254, at *3 (D. Or. Mar. 25, 2020) (collecting cases), *report and recommendation adopted sub nom. Zagal-Alcaraz v. ICE Field Off. Dir.*, 2020 WL 1855189 (D. Or. Apr. 13, 2020).

However, some courts apply the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to section 1226(c) challenges. *See, e.g.*, *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024), *rehearing en banc denied sub nom.*, *Black v. Almodovar*, 156 F.4th 171 (2d Cir. 2025), *cert. granted sub nom.*, *Genalo v. Black*, --- S. Ct. ----, 2026 WL 1718025 (June 15, 2026); *Rezende Alves Filho v. Warden, Mesa Verde Detention Facility*, 2026 WL 1662656, at *3 (E.D. Cal. June 9, 2026); *M.T.B. v. Byers*, 2024 WL 3881843, at *3 (E.D. Ky. Aug. 20, 2024). Under *Mathews*, courts must consider the following factors when evaluating whether procedures were constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

The Second Circuit noted in *Black* that courts, including the Supreme Court, have applied *Mathews* "to determine what process is due to noncitizens in removal proceedings" and "to examine the adequacy of procedures provided to individuals in custody, including noncitizens

---

[11] Though *Reid* considered whether a Petitioner was entitled to a bond hearing at all—that is, it was his first—other courts have recognized that the *Reid* factors apply to petitioners who have already had a bond hearing and are seeking a subsequent bond hearing. *See, e.g.*, *Jonalson v. Moniz*, 2022 WL 17651986, at *4 (D. Mass. Aug. 2, 2022).

legally present in the United States." 103 F.4th at 147–48. The court reasoned that the *Mathews* framework was the most suitable to evaluate due process challenges under section 1226(c) because it "'remains a flexible test,' and takes account of individual circumstances" and because it "comports with the Supreme Court's guidance in *Jennings* that 'due process is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'"[12] *Id.* at 148 (first quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022), then quoting *Jennings*, 583 U.S. at 314)). And a number of other district courts have found the *Mathews* framework particularly suitable when assessing whether an additional bond hearing is warranted after a petitioner already had a first bond hearing. *See, e.g.*, *Hernandez v. Bondi*, 2026 WL 1471891, at *2 (S.D. Cal. May 26, 2026) (collecting cases).

Ultimately, the First Circuit will need to weigh in on the proper standard. Therefore, here, for the sake of completeness, the Court will conduct the procedural due process analysis under both standards. *Cf. Zagal-Alcaraz*, 2020 WL 1862254, at *4 (applying both a *Reid*-like multi-factor test and *Mathews* to a section 1226(c) procedural due process challenge "[i]n an abundance of caution").

---

[12] This Court followed the reasoning in *Black* to determine that procedural due-process challenges to detention under section 1225(b) should also be analyzed under *Mathews*. *See Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256–57 (D. Mass. 2025) ("Notably, in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), the Second Circuit, citing the First Circuit's decision in *Hernandez-Lara*[ *v. Lyons*, 10 F.4th 19 (1st Cir. 2021)], concluded that procedural due-process challenges to detention under section 1226(c) should be analyzed under *Mathews*. Following that decision, district courts in the Second Circuit have concluded that procedural due-process claims concerning detention under section 1225(b) should likewise be analyzed under *Mathews*. Given the significant analytic overlap between these cases, Petitioner's, *Black*, and *Hernandez-Lara*, the Court sees no reason to invent or adopt a new procedural due-process test" for a challenge under section 1225(b).).

11

### b.    *Reid* **factors**

### i.    **Length of Detention**

"The most important factor in determining whether an alien's mandatory detention without a bond hearing is unreasonable is the total length of the detention." *Alphonse II*, 635 F. Supp. 3d at 35–36 (citing *Reid v. Donelan*, 390 F. Supp. 3d 201, 219 (D. Mass. 2019) ("*Reid III*")). Petitioner has been detained by immigration authorities for more than two years. Dkt. 60-4 ¶ 3. Even assuming arguendo Petitioner's prior bond hearing was adequate, which Petitioner disputes, Dkt. 61 at 9, 20 n.12, Petitioner has been detained for more than thirteen months since the prior hearing, Dkt. 36 at 1. "Although a one-year period of detention is not a 'bright line,' detention is 'likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics.'" *Alphonse II*, 635 F. Supp. 3d at 36 (quoting *Reid III*, 390 F. Supp. 3d at 219–20).

The cases Respondent cites as evidence that "courts within this district have previously . . . rejected *Reid* claims brought by criminal aliens who have been detained without a bond hearing for more than one year," Dkt. 72 at 19, nearly all found that the length of detention favored the petitioner but that the *other Reid* factors weighed in favor of the government, such that due process was not offended, *see, e.g.*, *Mendoza v. Moniz*, 2023 WL 7017020, at *3–4 (D. Mass. Oct. 23, 2023) (finding the length of the petitioner's seventeen-month-detention weighed in his favor but that his detention did not violate due process because the four other *Reid* factors weighed in the government's favor), *vacated as moot and appeal voluntarily dismissed*, 2024 WL 1776364 (1st Cir. Mar. 5, 2024); *Alphonse v. Moniz*, 2022 WL 279638, at *9–12 (D. Mass. Jan. 31, 2022) (same, with respect to detention of nearly fourteen months); *Martinez Lopez*, 2021 WL 6066440, at *5–8 (same, with respect to thirteen-month detention); *Dos Santos v. Moniz*, 2021 WL 3361882, at *3 (D. Mass. May 18, 2021) (same, with respect to detention of approximately sixteen and a

half months).  Therefore, these cases do not dissuade the Court from concluding that the first *Reid* factor weighs in favor of Petitioner.

### ii.    Foreseeability of Proceedings Concluding

Courts next consider "the foreseeability of proceedings concluding in the near future." *Reid III*, 390 F. Supp. 3d at 211.  This factor generally weighs in favor of the government when the proceedings are at an advanced stage and there is reason to expect an expedient resolution. *See, e.g.*, *Mendoza*, 2023 WL 7017020, at *3 ("Mr. Alvarez Mendoza's second appeal is pending; however, the appeal is anticipated to quickly resolve given that the briefings were due August 25, 2023.  Furthermore, on August 15, 2023, the Government filed a Motion to Expedite Mr. Alvarez Mendoza's Appeal with BIA.  The BIA appeal is fully briefed, and it is readily foreseeable that proceedings will conclude in the near future."); *Dos Santos*, 2021 WL 3361882, at *4 ("Petitioner's case is nearing resolution.  His appeal is fully briefed and has been pending before the BIA for three months.  ICE has filed a motion to expedite."); *Lewis v. Souza*, 2020 WL 2543156, at *3 (D. Mass. May 19, 2020) (noting that "Petitioner's appeal is at an advanced stage, with briefing submitted"); *Campbell v. Moniz*, 2020 WL 2129594, at *5–6 (D. Mass. May 5, 2020) (noting that one petitioner's "proceedings are at the late -- and potentially final -- stage of appellate court review;" another petitioner "currently has an appeal pending before the BIA," and "[g]iven the Government's pending motion to dismiss based on waiver or timeliness, the case may be resolved in the near future in the Government's favor"; and that "[b]riefing is underway" for the third).

However, this factor weighs in favor of the petitioner where resolution may take many months or has an unpredictable timeline.  *See, e.g.*, *Alphonse II*, 635 F. Supp. 3d at 37 (weighing this factor in favor of the petitioner because his "renewed case before the immigration judge may take months, and any appeal of an unfavorable outcome to the BIA may as well" and "[h]is application for U Visa will have an unpredictable effect on the length of proceedings"); *Tahlil v.*

13

*Moniz*, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020) ("Petitioner's appeal is at an early stage and so his proceedings are not likely to conclude in the near future.").

Petitioner was ordered removed to Honduras on June 4, 2026.  Dkt. 83.  His BIA appeal is due July 6, 2026, and to this Court's knowledge has not yet been submitted.  *Id.*  If the BIA affirms the ruling of the IJ, Petitioner intends to appeal to the First Circuit, Dkt. 61 at 18, which would further postpone resolution.  At best, Petitioner can expect resolution of his case to take months—perhaps many, many months—and therefore the second *Reid* factor weighs in favor of Petitioner.

### iii.    Period of Detention Compared to Criminal Sentence

The third *Reid* factor is "the period of the [immigration] detention compared to the criminal sentence."  *Reid III*, 390 F. Supp. 3d at 219.  As expressed in its earlier ruling in this case, the Court "does not place great weight on the third *Reid* factor."  Dkt. 27 at 2 n.2.  The government itself has acknowledged in briefing before the First Circuit that "'the length of a noncitizen's criminal sentence is not relevant to the constitutionality of his detention under Section 1226(c),' reasoning that '[i]f the noncitizen is removable for a ground that places him within a mandatory-detention category, . . . the length of his criminal sentence has no bearing on whether his continued immigration detention continues to serve the statute's purposes or whether he will ultimately be removed.'"  *Id.* (quoting Brief for the Respondents-Appellees at 37, *Alvarez Mendoza v. Moniz*, No. 23-1891 (1st Cir. 2024)).

Therefore, the Court declines to follow other courts in this District that have suggested that the "length of detention by immigration authorities may become unreasonable when it is grossly disproportionate to the length of the detainee's criminal sentence."  *Alphonse II*, 635 F. Supp. 3d at 37; *see also Lewis*, 2020 WL 2543156, at *3; *Campbell*, 2020 WL 2129594, at *5–6.  An unduly long period of detention during removal proceedings cannot be permissible merely because the

14

period of criminal detention was likewise lengthy.  That is, a twenty-year stint in immigration detention pending removal proceedings without a bond hearing is no less problematic if it follows twenty years of criminal incarceration than three years, regardless of proportionality.  Accordingly, this factor carries little weight.

### iv.    Promptness of the Parties

The fourth *Reid* factor is the promptness of the immigration authorities and the detainee. *Reid II*, 819 F.3d at 500.  This Court concluded in March 2025 that neither party had engaged in dilatory tactics or caused undue delay.  Dkt. 27 at 2.  However, on the eve of Petitioner's March 27, 2026 merits hearing, the government submitted a motion to pretermit challenging, for the first time, Petitioner's statutory eligibility for cancellation of removal.  Dkt. 60-20 ¶¶ 3–4; Dkt. 60-19 at 4.  The government's actions at the hearing resulted in a second continuance of Petitioner's merits hearing, which was not held until June 4, 2026, over two months later.[13]  Dkt. 60-20 ¶¶ 6–7; Dkt. 60-19 at 4–5.  Accordingly, this factor weighs slightly in favor of Petitioner.[14]

### v.    Likelihood of Final Removal Order

The final *Reid* factor is the likelihood that the proceedings will culminate in a final removal order.  *Reid II*, 819 F.3d at 500.  However, as Petitioner notes, the First Circuit suggested elsewhere in that opinion that this factor contemplates the likelihood of *actual removal*.  *Id.* at 500 n.4; *see*

---

[13] As noted, this was the second continuance.  The merits hearing was first held on January 7, 2026, but the IJ did not complete the proceedings at that time and scheduled a second hearing for March 27, 2026.  Dkt. 60-20 ¶ 2.

[14] The finding that this factor weighs only slightly in Petitioner's favor reflects the Court's recognition that delays in other cases could be much longer depending on the nature of any dilatory tactics and the IJ's docket.  The Court does not fail to appreciate that two months—or, indeed, even one day—of detention is extraordinarily significant both for the detainee and their loved ones.  *See Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."); *cf. Flast v. Cohen*, 392 U.S. 83, 108 (1968) (Douglas, J., concurring) ("The restraint on 'liberty' may be fleeting and passing and still violate a fundamental constitutional guarantee.").

*also* Dkt. 61 at 22 n.13.  Accordingly, both characterizations of the fifth *Reid* factor inform the Court's analysis.

Generally, the IJ's order "is the Court's best guide in determining the likelihood that the proceedings will conclude in a final removal order." *Tahlil*, 2020 WL 2560967, at \*3; *see also Alphonse II*, 635 F. Supp. 3d at 38–39.  However, where there is evidence that the petitioner has a "colorable argument against detention," this factor can weigh in the petitioner's favor. *Alphonse II*, 635 F. Supp. 3d at 39 (finding that the BIA's remand to the IJ "suggest[ed] that petitioner has a 'colorable' claim against deportation that 'draw[s] into question [his] presumed deportability.'" (quoting *Reid II*, 819 F.3d at 501)).

Petitioner contends that his merits argument—that his firearm conviction was overbroad and that overbreadth cannot be cured by an affirmative defense—is likely to prevail on appeal before the First Circuit.  Dkt. 61 at 17 & n.6.[15]  Petitioner argues that "vacatur of his removal order by the First Circuit would require only that it align with the consensus of every other circuit and Supreme Court precedent."  Dkt. 61 at 17.  The Court need not opine on the merits of Petitioner's argument—which already prevailed once before the IJ, *see* Dkt. 60-14 (granting Petitioner's second motion to terminate removal proceedings), before the decision was overturned by the BIA, *see* Dkt. 60-15—to conclude that Petitioner has, at the very least, a "colorable" claim against

---

[15] Petitioner's argument—drawing from his memorandum in support of his amended petition, Dkt. 61 at 17 & n.6, and his third motion to terminate removal proceedings, *see generally* Dkt. 60-16—is summarized as follows: Petitioner was convicted under Mass. Gen. Laws ch. 269, § 10(a).  *See* Dkt. 60-3 at 4–5; Dkt. 60-11 at 2.  The government "bears the burden of proving that the conviction triggers the alleged ground of removability."  Dkt. 60-16 at 7 (citing 8 U.S.C. § 1229a(c)(3)).  To determine whether a state-law firearm conviction renders a noncitizen deportable under 8 U.S.C. § 1227(a)(2)(C), courts use the "categorical approach," under which they compare the elements of the state crime to those of the federal counterpart.  *Portillo v. U.S. Dep't of Homeland Sec.*, 69 F.4th 25, 29 (1st Cir. 2023).  The Massachusetts statutory scheme, at the time of Petitioner's arrest and conviction, did not exclude antique firearms from its definition of "firearm," unlike its federal counterpart. *See Moncrieffe v. Holder*, 569 U.S. 184, 205 (2013).  An affirmative defense, which the defendant bears the burden of raising, is not an element of a crime, and therefore has no role in the categorical approach. Dkt. 60-16 at 10–11.  Accordingly, an affirmative defense cannot cure overbreadth.

removal. *But see* Dkt. 60-17 (order of the IJ denying Petitioner's third motion to terminate removal proceedings). Accordingly, this factor also weighs in favor of Petitioner.

### vi.    Other Factors

In *Reid II*, the First Circuit noted that, in addition to the five factors articulated, "there may be other factors that bear on the reasonableness of categorical detention, but we need not strain to develop an exhaustive taxonomy here. We note these factors only to help resolve the case before us and to provide guideposts for other courts conducting such a reasonableness review." 819 F.3d at 501. Petitioner encourages the Court to consider the conditions of confinement and the existence of alternatives to detention, arguing that these factors also counsel in favor of a bond hearing. Dkt. 61 at 23. However, the Court need not take up that invitation because the five *Reid* factors taken together already weigh in Petitioner's favor and indicate that Petitioner's continued detention without a bond hearing offends due process. The Court turns next to the *Mathews* framework.

### c.    *Mathews* factors

### i.    Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "The Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). "For this reason, 'civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protections.'" *Id.* (emphasis in original) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). And "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno*, 507 U.S. at 306; *cf. Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[O]nce

17

an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.").

Nevertheless, Congress, in the immigration context, "regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 511. And Petitioner's detention "in some sense w[as] the result of a criminal adjudication, since a conviction was the premise for applying section 1226(c). But [he] had served his entire sentence. And [his] detention[] did not arise from new or unpunished conduct." *Black*, 103 F.4th at 151.

In addition, "[a]s a result of [Petitioner's] prolonged absence, his partner and young daughters are facing homelessness and struggling to make ends meet." Dkt. 60 ¶ 1; *see Black*, 103 F.4th at 151 ("[T]he private interests of [Petitioner] were seriously affected by [his] prolonged detention," which "led unsurprisingly to serious financial difficulties for his family."). And "disruption of established family ties further compounds Petitioner's deprivation of liberty." *Tenemasa-Lema*, 810 F. Supp. 3d at 258. Petitioner's "interest may be stronger still because of his harsh conditions of confinement and their worsening impact on his health over time." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1017 (N.D. Cal. 2023), *abrogated on other grounds by*, *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024). Accordingly, this factor weighs heavily in Petitioner's favor.

### ii.    Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards

As to the second *Mathews* factor, the Court again borrows the thoughtful reasoning of the Second Circuit in *Black*.

> [T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests.
>
> At the threshold, two general observations are in order with respect to section 1226(c) detention. First, the "procedures used" for section 1226(c) detainees are

18

very few. *Mathews*, 424 U.S. at 335[]. They include no mechanism for a detainee's release, nor for individualized review of the need for detention. The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention. . . .[16]

Further . . . section 1226(c)'s broad reach means that many noncitizens are detained who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them. Section 1226(c) sweeps in people convicted of many nonviolent offenses, and does not take into account when the prior crime was committed, suggesting that the prior conviction may well be a poor proxy for a finding of dangerousness.

*Black*, 103 F.4th at 152 (internal citations and quotation marks omitted).

For a concrete example of the Second Circuit's concerns, the Court need look no further than *Reid*. Nearly half of the *Reid* class members, once they finally received bond hearings, were released because they were found not to be a flight risk or present a danger to the community. *See Reid IV*, 17 F.4th at 18 (Lipez, J., dissenting). Accordingly, the risk of erroneous deprivation is high, and this factor weighs in Petitioner's favor.

### iii.    Government Interest

The final *Mathews* factor is "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail' -- which ultimately entails an assessment of the 'public interest.'" *Hernandez-Lara*, 10 F.4th at 32 (quoting *Mathews*, 424 U.S. at 335, 347). "The prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." *Id.* (citation omitted); *see also Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders."). There is likewise little question that the government has an interest

---

[16] A *Joseph* hearing allows a detainee to "raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore*, 538 U.S. at 514 (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002), and *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). Petitioner sought and obtained his first bond hearing via *Joseph*. *See supra* Section I.C.

in "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." *Black*, 103 F.4th at 153 (citing *Demore*, 538 U.S. at 520–21).

However, as many other district courts confronting challenges to detention under section 1226(c) have explained: "The government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz*, 2020 WL 1862254, at *7; *see Doe v. Andrews*, 2025 WL 2590392, at *8 (E.D. Cal. Sept. 8, 2025), *report and recommendation adopted*, 2025 WL 2896218 (E.D. Cal. Oct. 11, 2025) (similar); *Henriquez v. Garland*, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (similar); *see also Hernandez-Cine v. Voorhies*, 2026 WL 972364, at *6 (N.D. Ohio Apr. 10, 2026) (reaching the same conclusion in the section 1226(a) context); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (similar).  Certainly, bond hearings entail an "administrative burden," but "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal." *Tenemasa-Lema*, 810 F. Supp. 3d at 258 (alteration in original) (internal quotation marks omitted).

Accordingly, while this factor weighs in favor of Respondent, it is insufficient to outweigh the first two factors, which counsel in favor of a second bond hearing.

### d.    <u>Bond Hearing</u>

Having determined that Petitioner is entitled to a bond hearing under either *Reid* or *Mathews*, the Court must now set parameters for the structure and substance of the hearing.

### i.    <u>Forum</u>

Petitioner encourages this Court to conduct the bond hearing itself.  Dkt. 61 at 25.  The Court has the authority to do so, *see, e.g.*, *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 477–78 (D. Mass. 2010), but, as Petitioner acknowledges, "federal judges have traditionally ordered bond hearings before an immigration judge."  Dkt. 61 at 25; *see e.g.*, *Gomes v. Hyde*, 804

F. Supp. 3d 265, 278 (D. Mass. 2025) (concluding that "the appropriate remedy is to order the Immigration Court to conduct a new hearing" rather than the court).  Here, where the IJ has not failed to follow the criteria set forth by this Court, the Court is not prepared to preemptively assume that Petitioner will not receive a fair hearing that complies with this order.  Accordingly, the Court declines to insert itself into the territory of the IJs and instead orders the bond hearing to be conducted in immigration court.

### ii.    Burden of proof

The parties dispute whether the petitioner or government should bear the burden of proof at a bond hearing under section 1226(c).  Dkt. 72 at 24–27; Dkt. 73 at 14–16.  In the absence of First Circuit precedent on this issue, the Court looks to other courts in this District and to the other circuit courts.

To begin, in *Alphonse II*, another court in this District concluded that "placing the burden of proof on the petitioner in a § 1226(c) bond hearing aligns with the First Circuit's reasoning and the Supreme Court's findings of congressional intent."  635 F. Supp. 3d at 40.  *Alphonse II* emphasized that the First Circuit has distinguished between mandatory detention under section 1226(c), and discretionary detention under section 1226(a), wherein the government bears the burden of demonstrating flight risk or danger.  *Id.* (citing *Hernandez-Lara*, 10 F.4th at 36, 39).  *Alphonse II* also relied on Justice Kennedy's concurrence in *Demore*, which asserted that the noncitizen would bear the burden of demonstrating he would not pose a risk of flight or danger.  *Id.* (citing *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).

On the other hand, the Second and Third Circuits, the only two circuit courts to have addressed this issue thus far, both held that the government bears the burden of justifying continued detention.  *See Black*, 103 F.4th at 157; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020).  Though detention is mandatory under section 1226(c), "once

detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing." *Black*, 103 F.4th at 157; *see German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d at 213 ("[O]nce detention under § 1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary.").

This Court is persuaded by the Second and Third Circuits. Certainly, as the First Circuit recognized in *Hernandez-Lara*, 10 F.4th at 35–36, there is a material difference between discretionary detention under section 1226(a) and mandatory detention under section 1226(c). But, as this Court has explained above, that detention under section 1226(c) is mandatory is not the end of the inquiry. The government is not permitted to detain noncitizens under section 1226(c) and throw away the key, no questions asked. Due process protections persist, even under a mandatory detention scheme. *Reid IV*, 17 F.4th at 7. Thus, once a noncitizen detained under section 1226(c) is granted a bond hearing, the government may no longer rest on the mandatory nature of the detention. Put differently, entitlement to a bond hearing signals that continued detention—*even* under a mandatory scheme—may offend due process. At that point, though the distinction between detention under 1226(a) and 1226(c) has not collapsed, it has certainly narrowed, and any justification for imposing the burden of proof on the detainee has been eroded.

Accordingly, the government bears the burden of demonstrating dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Cf. Hernandez-Lara*, 10 F.4th at 41.

### iii.    Alternatives to Detention

Petitioner next argues that "the government should be prohibited from continuing to detain [him] unless it proves that alternatives to detention, such as GPS monitoring, would not suffice to address its concerns about flight risk and danger." Dkt. 61 at 23. The Court is persuaded.

First, this Court, and others in this District, have required IJs to consider alternatives to detention under section 1226(a). *See Da Silva v. Wesling*, No. 26-cv-11967, Dkt. 17 (May 19, 2026); *see also Costa v. McDonald*, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026); *Rogerio Ramos v. Moniz*, No. 26-cv-11388, Dkt. 19 at 4–5 (Apr. 27, 2026); *Mijango Velasco v. Wesling*, No. 26-cv-11355, Dkt. 19 at 5 (Apr. 24, 2026).   "[R]equiring the Government to consider alternatives helps ensure such decisions are properly tailored to the underlying danger or flight risk concerns." *Costa*, 2026 WL 371198, at *3.  Certainly, mandatory detention under section 1226(c) is different from discretionary detention under section 1226(a) and criminal pretrial detention, which the government must affirmatively request in most cases. *See* 18 U.S.C. § 3142(f)(1), (2). But, as discussed above, once a noncitizen becomes entitled to a bond hearing under section 1226(c), the mandatory nature of the provision is no longer dispositive. *See supra* Section III.1.d.ii.

Further, considering less restrictive alternatives to detention tracks the approach to pretrial detention in the criminal context, which shares the twin aims of section 1226(c) detention: ensuring that the individual appears for their proceedings and ensuring the safety of community members. *See* 18 U.S.C. § 3142(e)(1) (mandating pretrial detention "[i]f . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community").

Finally, the Court notes briefly that in at least one bond hearing where the IJ was directed to consider alternatives to detention, the IJ expressed concern about the ability of the immigration court to order and enforce alternative conditions and the ability of DHS to comply with such an order. *See Da Silva v. Wesling*, No. 26-cv-11967, Dkt. 19 at 5 (D. Mass. May 27, 2026); *see also Da Silva*, No. 26-cv-11967, Dkt. 22 (notice of manual filing of audio exhibit).  It is beyond the

purview of this Court to micromanage IJs or to order specific alternative conditions be adopted. However, the Court will emphasize that infeasibility does not excuse constitutional compliance. In the same way that ICE could not force detained noncitizens to sleep standing upright for nights on end because it lacked sufficient beds, ICE cannot shield itself from meaningfully considering alternatives to detention on the ground that it lacks capacity.[17]  Practicality imposes limits, of course, but will always be secondary to the guarantees of our Constitution.  Put simply, ICE may only arrest, detain, and remove the number of individuals that its capacity allows it to arrest, detain, and remove consistent with constitutional constraints.

### 2.    Substantive Due Process

Petitioner also argues that the prolonged duration and harsh conditions of confinement have together rendered his detention punitive in violation of substantive due process.  Dkt. 60 ¶¶ 77–83. Petitioner's detention may also constitute a standalone due process violation, but the adjudication of such a claim would likely require the submission of further evidentiary support.  Moreover, if Petitioner is released on bond at his upcoming bond hearing, his substantive due process challenge will be moot.  Accordingly, the Court will hold Petitioner's substantive due process challenge in abeyance pending the outcome of the bond hearing.

### 3.    Release Pending Adjudication

Finally, Petitioner argues that the Court should order him released provisionally pending adjudication of his petition.  Dkt. 60 at 26.  "[A] district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits."

---

[17] The Court notes, too, that the high cost of detaining noncitizens somewhat undermines arguments about a lack of departmental capacity.  As Petitioner highlighted, immigration detention costs the government approximately $134 per detainee per day.  Dkt. 61 at 24 (citing *Hernandez-Lara*, 10 F.4th at 33).  "Based on that figure, the government already has spent nearly $100,000 on [Petitioner's] detention, and could spend close to another $100,000 by forcing him to remain in detention until the First Circuit rules on his petition for review."  *Id.*

24

*Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam).  However, because Petitioner may be imminently released, the Court declines to exercise its discretion to order release at this juncture.

## IV.    Conclusion

For the foregoing reasons, Petitioner's petition is GRANTED in part.  Petitioner shall have a bond hearing to consider the merits of his release on or before 5:00 p.m. on Thursday, June 25, 2026, at which the government bears the burden of demonstrating that Petitioner is a flight risk by a preponderance of the evidence, or a danger to the community by clear and convincing evidence, and that no adequate alternatives to detention exist.  Failure of an IJ to conduct the bond hearing as ordered will entitle Petitioner to request a bond hearing before this Court.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated: June 18, 2026                                    Judge, United States District Court

25